# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT CLEVELAND

| | |
|---|---|
| PATRICK D. TRIVISON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Patrick D. Trivison, individually and on behalf of all others similarly situated, by and through counsel, brings this action against Defendant Federal National Mortgage Association, and for his Class Action Complaint, states as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Patrick Trivison ("Plaintiff") is a natural person residing in Cuyahoga County, Ohio.

2. Defendant Federal National Mortgage Association ("Defendant" or "FNMA") is a government-sponsored entity under the conservatorship of the Federal Housing Finance Agency.

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under the Truth in Lending Act, 12 U.S.C. §§ 1601, *et seq*. ("TILA").

4. Venue lies in this District pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## TILA AND REGULATION Z

5. TILA provides that a creditor or servicer of a home loan shall provide an accurate payoff balance within a reasonable period, but within seven (7) business days regardless of circumstances, upon receipt of a written request from a borrower for the same. 15 U.S.C. § 1639g.

6. In January 2013, the Consumer Finance Protection Bureau ("CFPB") issued a number of final rules concerning mortgage markets in the United States, pursuant to the authority granted by the Dodd-Frank Wall Street Reform and Consumer Protection Act—Public Law No. 111-203, 124 Stat. 1376 (2010)—which amended TILA.

7. The CFPB's TILA Mortgage Servicing Final Rules—known as "Regulation Z" and codified as 12 C.F.R. § 1026.1, *et seq.*—were issued on January 17, 2013, and became effective on January 10, 2014.

8. Through Regulation Z, the CFPB has provided guidance for the interpretation of certain TILA provisions, including servicers' duties related to responding to requests for a payoff balance.

9. Regarding payoff statements, Regulation Z provides that:

> In connection with a consumer credit transaction secured by a consumer's dwelling, a creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date. The statement shall be sent within a reasonable time, but in no case more than seven business days, after receiving a written request from the consumer or any person acting on behalf of the consumer. When a creditor, assignee, or servicer, as applicable, is not able to provide the statement within seven business days of such a request because a loan is in bankruptcy or foreclosure, because the loan is a reverse mortgage or shared appreciation mortgage, or because of natural disasters or other similar circumstances, the payoff statement must be provided within a reasonable time.

12 C.F.R. § 1026.36(c)(3).

## STATEMENT OF FACTS

### *Plaintiff's and Class Members' Loans*

10.  FNMA is the assignee of Plaintiff's and Class (defined *infra*) members' notes, and mortgages on real property that secure those notes (collectively referred to hereinafter as the "loans"). On information and belief, Plaintiff's and Class members' loans contain substantially similar language, as they were drafted using standardized templates common to all loans owned or assigned to FNMA.

11.  Plaintiff's and Class members' loans are each a closed-end consumer credit transaction secured by their respective dwellings as contemplated by TILA and Regulation Z. 15 U.S.C. § 1602; 15 U.S.C. § 1639g; 12 C.F.R. § 1026.36(b).

12.  As such, FNMA is subject to the requirements of TILA and Regulation Z in relation to the loans.

13.  Pursuant to the terms of Plaintiff's and Class members' loans, Plaintiff and Class members are (or were) required to make periodic, monthly installment payments on their loans until the entire balance is paid in full. *See*, note for Plaintiff's loan ("Plaintiff's Note"), ¶ 3, attached hereto as Exhibit 1. Plaintiff's and Class members' loans specifically refer to these periodic installment payments as "monthly payments." *See, e.g.*, Plaintiff's Note, ¶¶ 3, 6.

14.  Plaintiff's and Class members' loans further provide that if any "monthly payment" is not paid within a certain number of days after it is due, Plaintiff and Class members will be required to pay a "late charge." *See*, Plaintiff's Note, ¶ 6(A).

15.  Pursuant to the terms of Plaintiff's and Class members' loans, if Plaintiff and Class members fail to timely make each required "monthly payment," they will be in default on their loans. *See*, Plaintiff's Note, ¶ 6(B). Plaintiff's and Class members' loans further provide that if

they are in default, the "Note Holder"—*e.g.*, the current owner of the loan, or the servicer of the loan (on behalf of the current owner of the loan)—may send them written notice that if they do not pay the delinquent balance of their respective loans by a certain date, the Note Holder may require them to immediately pay the full balance of their respective loans—*i.e.*, Plaintiff's and Class members' loans would be "accelerated."  *See*, Plaintiff's Note, ¶ 6(C).

16. Based on the plain terms of Plaintiff's and Class members' loans, Plaintiff and Class members are (or were) no longer required to make "monthly payments" on their loans after acceleration.  Indeed, acceleration, by definition, requires a borrower to pay the *entire balance* of a loan *immediately*, instead of in preset installment amounts made at regularly scheduled and predetermined intervals.  *Compare*, Plaintiff's Note, ¶ 6(C) (describing Plaintiff's payment obligations after acceleration) *with* Plaintiff's Note, ¶ 3 (describing Plaintiff's "monthly payment" obligations).

17. As noted above, the terms of Plaintiff's and Class members' loans establish that the condition precedent to the imposition of "late charges" is the failure to comply with their "monthly payment" obligations.  *See*, Plaintiff's Note, ¶ 6(A).  However, after acceleration, that condition precedent can no longer occur because Plaintiff's and Class members' obligation to make "monthly payments" ceases.  Therefore, Plaintiff's and Class members' loans *do not* authorize the imposition of "late charges" after acceleration.

### *Defendant's Improper Imposition of Late Charges*

18. FNMA contracts with various entities to service loans assigned to them, and these servicers act at the direction of FNMA and on their behalf (collectively referred to hereinafter as the "servicers").

19. At some point during the time period relevant to this action, Plaintiff's and Class members' loans were each in default due to their failure to timely remit periodic "monthly payments" on their loans. *See*, Plaintiff's Note, ¶ 6(B).

20. In compliance with the terms of Plaintiff's and Class members' loans, FNMA—or its servicers, acting on behalf of FNMA—sent notices of default to Plaintiff and Class members stating that if Plaintiff and Class members did not pay all overdue amounts, they would require Plaintiff and Class members to immediately pay the full amount of unpaid principal and all the interest owed on such amount—*i.e.*, Plaintiff's and Class members' loans would be "accelerated." *See*, Plaintiff's Note, ¶ 6(C).

21. After receiving the aforementioned notices of default, Plaintiff and Class members did not remit further payments on their loans. As a result, FNMA—or its servicers, acting on behalf of FNMA—accelerated Plaintiff's and Class members' loans. *See*, Plaintiff's Note, ¶ 6(C).

22. For the reasons set forth above, at the time Plaintiff's and Class members' loans were accelerated, their obligation to remit timely periodic "monthly payments" on their loans ceased, as they were instead required to *immediately* pay the *entire balance* of their loans. *See*, Plaintiff's Note, ¶ 6(C).

23. Since Plaintiff and Class members no longer had the obligation to remit timely periodic "monthly payments" on their loans, the condition precedent relative to the imposition of "late charges"—*i.e.*, the failure to timely remit "monthly payments"—did not, and could not, occur.

24. Nevertheless, FNMA—or its servicers, acting on behalf of FNMA—continued to impose "late charges" against Plaintiff and Class members (the "Improper Late Fees"). For the

reasons stated above, these Improper Late Fees were not authorized by the terms of the loans or otherwise by law.

### Defendant's TILA Violations

25. Plaintiff and Class members each submitted a written request to FNMA and/or its servicers seeking an accurate payoff balance for their loans (collectively, the "Payoff Requests"), pursuant to 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3).

26. In response to each of the Payoff Requests, FNMA—or its servicers, acting on behalf of FNMA—provided Plaintiff and Class members with payoff statements ("Payoff Statements") that included the Improper Late Fees as an amount due and owing on each of their loans. Since the payoff balances reflected on these Payoff Statements included Improper Late Fees, the Payoff Statements were inaccurate because they overstated the payoff balance of Plaintiff's and Class members' loans.

27. As a result of the foregoing conduct, FNMA—or its servicers, acting on behalf of FNMA—violated the duties owed to Plaintiff and Class members pursuant to 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3).

28. The servicers of Plaintiff's and Class members' loans were acting on behalf of FNMA when they (1) imposed the Improper Late Fees against Plaintiff and Class members, (2) received, evaluated, and responded to Plaintiff's and Class members' Payoff Requests, and (3) provided Plaintiff and Class members with inaccurate Payoff Statements. Therefore, FNMA is vicariously liable for violations of 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3) committed by its servicers as alleged in this matter. *Kolano v. Bank of Am.*, 2014 WL 1117862, at *6 (N.D. Ohio 2014) (citing, *inter alia*, *Kissinger v. Wells Fargo Bank, N.A.*, 888 F.Supp.2d 1309, 1315

(S.D. Fla. 2012)); *Justice v. Ocwen Loan Servicing*, 2015 WL 235738 at *13, n. 9 (S.D. Ohio 2015) (citing *Kolano*, 2014 WL 1117862 at *6).

29. Defendant's violations of 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3) harmed Plaintiff and Class members in several ways, as specified below.

30. First, "a core object of" TILA's disclosure requirements is the protection of "a consumer's concrete interest in avoiding the uninformed use of credit," such that the inaccurate Payoff Statements harmed Plaintiff's and Class members' "concrete interest in the informed use of credit." *Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2nd Cir. 2016). Indeed, the inaccurate Payoff Statements jeopardized Plaintiff's and Class members' ability to accurately assess and pursue loss mitigation options—*e.g.*, reinstatement, refinancing, loan modifications, short sales, etc.—to avoid foreclosure.

31. Second, as a result of the inaccurate Payoff Statements, some Class members reasonably believed that they were required to pay the Improper Late Fees, and, as a result, paid those Improper Late Fees (either directly or indirectly) as part of reinstating or refinancing their loans, loan modifications, or as a result of foreclosure.

32. Third, Plaintiff and Class members were harmed because they incurred the expenses associated with sending the Payoff Requests—such as their time, postage, attorneys' fees, etc.—but they did not receive accurate information to which they were legally entitled pursuant to TILA and Regulation Z. Because FNMA—or its servicers, acting on behalf of FNMA—failed to meet its obligations under TILA and Regulation Z, the time and expense associated with Plaintiff's and Class members' submission of the Payoff Requests "metamorphosed into damages." *E.g.*, *Marais v. Chase Home Fin., LLC*, 24 F.Supp.3d 712, 728 (S.D. Ohio 2014); *Justice*, 2015 WL 235738, at *19; *McMillen v. Resurgent Capital Services, L.P.*,

2015 WL 5308236, at *10 (S.D. Ohio 2015); *Dale v. Selene Fin. LP*, 2016 WL 6024580, at *3 (N.D. Ohio 2016).

33. Finally, some Class members, like Plaintiff, incurred additional damages in the form of expenses associated with sending "notices of error" ("NOEs") pursuant to 12 C.F.R. § 1024.35(a) and 12 U.S.C. § 2605(E)(1)(B)—such as their time, postage, attorneys' fees, etc.—regarding the erroneous imposition of Improper Late Fees and the inaccurate Payoff Statements they received as a result. These NOEs would not have been necessary but for Defendant's failure to provide accurate Payoff Statements as required by 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3).

## FACTS RELEVANT TO PLAINTIFF

34. On December 21, 2002, Plaintiff entered into a mortgage loan with Citizens Bank, N.A. ("Citizens") which was secured by a mortgage on Plaintiff's principal place of residence. *See*, Plaintiff's Note, ¶ 1. As such, Plaintiff's loan was a closed-end consumer credit transaction secured by his dwelling as contemplated by TILA and Regulation Z. 15 U.S.C. § 1602; 15 U.S.C. § 1639g; 12 C.F.R. § 1026.36(b).

35. At all times relevant herein, FNMA was the assignee of Plaintiff's loan. *See*, correspondence from Citizens identifying FNMA as the assignee of Plaintiff's loan, attached as Exhibit 2. However, pursuant to a contractual agreement between FNMA and Citizens, Citizens was, at all times relevant herein, the servicer of Plaintiff's loan. As the servicer of Plaintiff's loan, Citizens acted on behalf of FNMA relative to FNMA's obligations under TILA and Regulation Z.

36. Pursuant to the terms of Plaintiff's loan, Plaintiff was required to make periodic, "monthly payments" in the amount of $632.26 until the entire balance was paid in full. *See*,

Plaintiff's Note, ¶ 3. Each of Plaintiff's "monthly payments" was due on the first day of each month beginning on February 1, 2003. *See*, Plaintiff's Note, ¶ 3(B).

37. Plaintiff's loan further provided that if any "monthly payment" was not paid within 15 days after it is due, Plaintiff would be required to pay a "late charge" in the amount of 5% of the overdue "monthly payment" amount. *See*, Plaintiff's Note, ¶ 6(A).

38. Pursuant to the terms of Plaintiff's loan, if Plaintiff failed to timely make each required "monthly payment," he would be in default on his loan. *See*, Plaintiff's Note, ¶ 6(B). Plaintiff's loan further provided that if he was in default, the Note Holder may send him written notice that if he did not pay the delinquent balance by a certain date, his loan would be accelerated. *See*, Plaintiff's Note, ¶ 6(C).

39. Plaintiff failed to make his "monthly payments" on his loan in August and September 2018. As such, Plaintiff was in default on his loan beginning on August 1, 2018. *See*, Plaintiff's Note, ¶ 6(B).

40. On September 5, 2018, Citizens—acting on behalf of FNMA—sent Plaintiff a letter stating that Plaintiff was in default on his loan, and that he was required to pay the delinquent balance, plus "late charges," by October 10, 2018—*i.e.*, the "Cure Date." *See*, September 5, 2018 letter from Citizens to Plaintiff ("Default Letter"), p. 1, attached hereto as <u>Exhibit 3</u>. The Default Letter also stated that Plaintiff's failure to pay the delinquent balance, plus "late charges," by the Cure Date may result in acceleration of Plaintiff's loan and the commencement of foreclosure proceedings. *See*, Default Letter, p. 1.

41. Plaintiff did not make any further payments on his loan after receiving the Default Letter. As a result, Citizens—acting on behalf of FNMA—accelerated Plaintiff's loan in or about October 2018.

42. Based on the plain terms of Plaintiff's loan, Plaintiff was no longer required to make "monthly payments" on his loan after it was accelerated. *Compare*, Plaintiff's Note, ¶ 6(C) (describing Plaintiff's payment obligations after acceleration) *with* Plaintiff's Note, ¶ 3 (describing Plaintiff's "monthly payment" obligations). Consistent with this interpretation of Plaintiff's loan, Citizens—acting on behalf of FNMA—ceased engaging in collection activities relative to Plaintiff's "monthly payments" on his loan.

43. As noted above, Plaintiff's loan only authorized the imposition of "late charges" in the event that Plaintiff failed to make a required "monthly payment." *See*, Plaintiff's Note, ¶ 6(A). Because Plaintiff's obligation to make "monthly payments" on his loan ceased after it was accelerated, Citizens—acting on behalf of FNMA—was no longer authorized to impose "late charges" against Plaintiff.

44. On or about April 3, 2019, Citizens—acting on behalf of FNMA—filed a foreclosure action against Plaintiff in the Cuyahoga Court of Common Pleas captioned *Citizens Bank, N.A., etc. v. Patrick D. Trivison, et al.*, Case No. CV-19-913410 (the "Foreclosure Action").

45. On September 6, 2019, Plaintiff, through counsel, sent a written Payoff Request to Citizens seeking an accurate payoff balance for Plaintiff's loan, pursuant to 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3). *See*, Plaintiff's Payoff Request, attached as Exhibit 4.

46. On October 7, 2019, Citizens—acting on behalf of FNMA—through counsel, sent Plaintiff a Payoff Statement which contained a "pay off figure good through October 11, 2019" in the amount of $75,354.34. *See*, Plaintiff's Payoff Statement, p. 1, attached as Exhibit 5.

47. As part of the total amount due set forth in Plaintiff's Payoff Statement, Citizens— acting on behalf of FNMA—demanded "Accumulated Late Charges" in the amount of $227.11. *See*, Plaintiff's Payoff Statement, p. 2. However, based on the plain terms of Plaintiff's loan, the

maximum amount of "late charges" that could be imposed in connection with a missed "monthly payment" was approximately $31.61 per month. *See*, Plaintiff's Note, ¶ 3(B) (establishing a "monthly payment" amount of $632.26); Plaintiff's Note, ¶ 6(A) (authorizing a "late charge" equal to 5% of the overdue "monthly payment" amount). Since Plaintiff's loan only authorized one "late charge" per missed "monthly payment" (*See*, Plaintiff's Note, ¶ 6(A)), and Plaintiff only missed, at most, three "monthly payments" before his loan was accelerated, the total "late charges" imposed should not have exceeded $100.

48. The discrepancy between the "Accumulated Late Charges" set forth in Plaintiff's Payoff Statement and the actual amount of "late charges" that should have been imposed against Plaintiff pursuant to the terms of Plaintiff's loan is the result of the fact that Citizens—acting on behalf of FNMA—charged Plaintiff Improper Late Fees after his loan was accelerated. Indeed, $227.11—the "Accumulated Late Charges" set forth in Plaintiff's Payoff Statement—divided by 13 months—the number of months between when Plaintiff was in default and when the Payoff Statement was generated—equals a $17.47 "late charge" per month, demonstrating the Citizens—acting on behalf of FNMA—continued to impose "late charges" against Plaintiff, even after his loan was accelerated. *See*, Exhibit 7, p.1 (stating that Plaintiff was charged a late charge each month "in the amount of $17.47 each as the monthly payment was not satisfied within the fifteen (15) day grace period.").

49. Since there was no basis for Citizens and FNMA to impose the Improper Late Fees under the express terms of Plaintiff's loan or under applicable law, the payoff amount set forth in Plaintiff's Payoff Statement was inaccurate, in violation of 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3).

50. After Plaintiff received his inaccurate Payoff Statement and discovered that Citizens—acting on behalf of FNMA—was charging him Improper Late Fees, Plaintiff, through counsel, sent an NOE—pursuant to 12 C.F.R. § 1024.35(a) and 12 U.S.C. § 2605(E)(1)(B)—to Citizens on February 3, 2020. *See*, Plaintiff's NOE, attached hereto as Exhibit 6. In his NOE, Plaintiff asserted the Citizens—acting on behalf of FNMA—made an error in servicing his mortgage loan account—namely, the imposition of Improper Late Fees. *See*, Plaintiff's NOE, p. 2.

51. But for Citizens's and FNMA's imposition of Improper Late Fees, and corresponding failure to provide Plaintiff with an accurate Payoff Statement as required by 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3), Plaintiff would not have been required to send his February 3, 2020 NOE to Citizens.

52. On March 2, 2020, Citizens—acting on behalf of FNMA—responded to Plaintiff's NOE (the "NOE Response") and confirmed that it—acting on behalf of FNMA—continued to impose "late charges" in the amount of $17.47 for each month after Plaintiff's loan was accelerated—*i.e.*, that Citizens (acting on behalf of FNMA) had, in fact, imposed Improper Late Fees. *See*, NOE Response, attached as Exhibit 7.

53. The NOE Response also stated that the imposition of Improper Late Fees was not an error and that "the Bank will impose any necessary fee assessments to ensure the Bank's interest is not in jeopardy", indicating that Citizens—acting on behalf of FNMA—would continue to impose further Improper Late Fees. *See*, NOE Response. In fact, the NOE Response reflects that Citizens—acting on behalf of FNMA—did just that, as it indicated that the amount of accumulated "late charges" on Plaintiff's loan had increased to $314.46. *See*, NOE Response.

54. Plaintiff was harmed by Citizens's actions in failing to send an accurate payoff balance in response to Plaintiff's Payoff Request, for which FNMA is vicariously liable, because Plaintiff incurred the expenses associated with sending his Payoff Request—such as time, postage, attorneys' fees, etc.—but he did not receive accurate information to which he was legally entitled pursuant to TILA and Regulation Z. Because FNMA—and Citizens, acting on behalf of FNMA—failed to meet its obligations under TILA and Regulation Z, the time and expense associated with Plaintiff's submission of his Payoff Request "metamorphosed into damages." *E.g.*, *Marais*, 24 F.Supp.3d at 728.

55. Moreover, as a result of Defendant's and Citizen's actions, Plaintiff was deprived of his "concrete interest in the informed use of credit" because it impaired his ability to accurately assess and pursue loss mitigation options—*e.g.*, reinstatement, refinancing, loan modifications, short sales, etc.—during the course of the Foreclosure Action. *See, e.g.*, *Strubel*, 842 F.3d at 190.

56. Finally, Plaintiff was further harmed because he incurred expenses associated with sending his NOE to Citizens—such as time, postage, attorneys' fees, etc.—which would not have been necessary but for Defendant's and Citizen's conduct described herein.

## CLASS ACTION ALLEGATIONS

57. **Class Definition**: Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a class of similarly situated individuals and entities (the "Class"), defined as follows:

> All loan borrowers in the United States, during the one year prior to the filing of this Complaint, (1) who had mortgage loans for which FNMA was the creditor or assignee, (2) whose mortgage loans did not provide for the imposition of late fees or charges after acceleration of their mortgage loans, (3) against whom late fees or charges were imposed after acceleration of their mortgage loans, (4) who submitted to FNMA or its servicers a written request for an accurate payoff balance for their mortgage loans, and (5) to whom FNMA or its servicers sent a statement of the balance of the amounts due and owing to pay off their loans which included late fees or

charges that were imposed after acceleration of their mortgage loans.

Excluded from the Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

58.     **Numerosity and Ascertainability**: Upon information and belief, the Class is comprised of more than forty (40) members, such that the Class is so numerous that joinder of all members is impractical. This conclusion is reasonable because in 2019 alone, FNMA purchased enough loans from lenders to free up more than $650,000,000,000 in liquidity enabling 1,200,000 home purchases and 1,100,000 mortgage refinancings. *See*, FNMA's webpage captioned "About Fannie Mae", available at: https://www.knowyouroptions.com/about-fannie-mae (last accessed March 27, 2020). While the exact number of members in the Class is presently unknown and can only be ascertained through discovery, Class members can easily be identified through Defendant's records or by other means.

59.     **Commonality and Predominance:** There are questions of law and fact common to the proposed Class that predominate over any individual questions.  As a result of Defendant's conduct described herein, Plaintiff and Class members were each denied accurate Payoff Statements and were harmed as a result.  Moreover, given the availability of statutory damages pursuant to 15 U.S.C. § 1640(a)(2)(A), individualized damages determinations will not predominate over classwide damages issues.

60.     **Typicality**: Plaintiff's claims are typical of the claims of the Class. On information and belief, Plaintiff's and Class members' loans contain substantially similar language, as they

were drafted using standardized templates common to all loans owned or assigned to FNMA. As such, Plaintiff and all members of the Class were subjected to and affected by a uniform course of conduct; specifically, FNMA and/or its servicers failing to provide accurate Payoff Statements as the balances stated therein included Improper Late Fees incurred after their loans were accelerated.

61. **Adequacy**: Plaintiff will adequately represent the interests of the Class and does not have adverse interests to the Class. Plaintiff's counsel has extensive experience litigating consumer class actions.

62. **Superiority**: A class action is the superior method for the quick and efficient adjudication of this controversy. If individual Class members prosecuted separate actions it may create a risk of inconsistent or varying judgments that would establish incompatible standards of conduct.

## COUNT I
### (Violations of 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3))
### (On behalf of Plaintiff and the Class)

63. Plaintiff repeats and realleges paragraphs 1 through 62 with the same force and effect as though fully set forth herein.

64. Plaintiff and Class members each submitted Payoff Requests to FNMA or its servicers relative to their loans, pursuant to 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3).

65. In response to Plaintiff's and Class members' Payoff Requests, FNMA—or its servicers, acting on behalf of FNMA—failed to provide accurate Payoff Statements—as required by 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3)—because the payoff balances stated therein included Improper Late Fees.

66. For the reasons stated above, Plaintiff and Class members were each harmed as a result of the actions of FNMA—or its servicers, acting on behalf of FNMA.

67. FNMA is vicariously liable for violations of 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3) committed by its servicers as alleged in this matter. *E.g.*, *Kolano*, 2014 WL 1117862 at *6.

68. As a result of the actions of FNMA and its servicers—acting on behalf of FNMA—FNMA is liable to Plaintiff and Class members for actual damages, statutory damages, costs, and attorney fees. 15 U.S.C. §§ 1640(a)(1)-(3); 15 U.S.C. § 1641.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Patrick D. TRIVISON, individually, and on behalf of the Class, prays for an order as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Class defined herein;

B. Designating Plaintiff as representative of the Class and his undersigned counsel as Class Counsel;

C. Entering judgment in favor of Plaintiff and the Class, and against Defendant;

D. Awarding Plaintiff and the Class their actual damages and statutory damages as allowed under TILA;

E. Awarding Plaintiff and the Class attorneys' fees and costs; and,

F. Granting all such further and other relief as this Court deems just and appropriate.

Respectfully submitted,

*/s/ Marc E. Dann*
Marc E. Dann (Ohio Bar No. 0039425)
Daniel M. Solar (Ohio Bar No. 0085632)
mdann@dannlaw.com
dsolar@dannlaw.com
notices@dannlaw.com
Dann Law
P.O. Box 6031040
Cleveland, OH 44103
Phone: (216) 373-0539

Thomas A. Zimmerman, Jr. (*pro hac vice* anticipated)
tom@attorneyzim.com
Matthew C. De Re (*pro hac vice* anticipated)
matt@attorneyzim.com
Zimmerman Law Offices, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Phone: (312) 440-0020

*Counsel for Plaintiff and the putative Class*

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues.

*/s/ Marc E. Dann*
Marc E. Dann (Ohio Bar No. 0039425)
Daniel M. Solar (Ohio Bar No. 0085632)
Dann Law