# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| PATRICK D. TRIVISON, individually and on behalf of all others similarly situated, | ) ) ) | CASE NO.  1:20 CV 00711 |
| | ) | JUDGE DAVID A. RUIZ |
| Plaintiff, | ) ) | |
| v. | ) ) | **DEFENDANTS' MOTION TO DISMISS** |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION and CITIZENS BANK, N.A., | ) ) ) ) | **AMENDED COMPLAINT** |
| Defendants. | ) ) | |

Defendants Federal National Mortgage Association ("Fannie Mae") and Citizens Bank, N.A. ("Citizens," jointly with Fannie Mae, "Defendants"), by and through their attorneys, move the Court pursuant to Fed. Civ. R. 12(b)(6) to dismiss the First Amended Complaint ("Amended Complaint") of Plaintiff Patrick D. Trivison, individually and on behalf of all other similarly situated persons ("Plaintiff").

Fannie Mae respectfully requests that the Court take judicial notice of the fact that Fannie Mae has been in federal conservatorship since 2008 pursuant to 12 U.S.C. 4617.

In support of this Motion, the Defendants rely upon and incorporate the attached Memorandum in Support.

Respectfully Submitted,
*/s/ Kathleen A. Nitschke*
Kerin Lyn Kaminski (0013522)
Kathleen A. Nitschke (0073397)
PEREZ MORRIS
1300 East Ninth Street, Suite 1600
Cleveland, Ohio 44114
Telephone:   216-621-5161
Facsimile:   216-621-2399
E-Mail:   kkaminski@perez-morris.com
knitschke@perez-morris.com
***Counsel for Defendants Federal National Mortgage Association and Citizens Bank, N.A.***

# TABLE OF CONTENTS

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**.................................................................................2

**I.  FACTS**...........................................................................................2

    **A. Fannie Mae and Its Servicers**............................................................2

    **B. FHFA and Fannie Mae in Conservatorship**........................................3

    **C. History of Plaintiff's Loan**.................................................................5

    **D. The Pending Foreclosure Action**........................................................6

    **E. Plaintiff's Claims Against Defendants**..................................................7

**II. THE STANDARD WHEN THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH CAN BE GRANTED**.........................................................8

**III. THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIMS OR IN THE ALTERNATIVE STAY THIS MATTER UNTIL A FINAL ORDER IS ISSUED IN THE FORECLOSURE ACTION**.........................................................9

    **A.  The Younger Doctrine Applies, and This Court Should Abstain from Ruling on the Declaratory Judgment Claim**.......................................................9

    **B.  Plaintiff Cannot Sustain a Claim for Breach of Contract Against the Defendants**...10

    **C.  Fannie Mae Is Not Directly or Vicariously Liable for the Alleged Violation of TILA**...14

        **1. Fannie Mae Is Not a Creditor and Therefore Cannot Violate 15 U.S.C. § 1639(g)**...16

        **2. Fannie Mae Is Not Liable for the Alleged Violations of TILA as Loan Assignee**...17

    **D. Plaintiff's Claim Fails Because He Cannot Show That He Suffered Any Actual Damages Pursuant to 15 U.S.C. § 1640(A)(1)**.......................................19

    **E. Plaintiff's Claim for Statutory Damages and Attorneys' Fees Are Barred by 12 U.S.C. § 4617(j)**............................................................................22

        **1. The Penalty Bar Applies to Fannie Mae and Citizens and Therefore Precludes The Imposition of "Amounts in the Nature of Penalties or Fines"**.........................23

        **2. TILA's Statutory Damages are in the Nature of Penalties and are Thus Barred**...25

        **3. Plaintiff's Demand for Attorneys' Fees are in the Nature of Penalties and are Thus Barred**.................................................................................26

    **F. Plaintiff Cannot Rescind The Loan**.......................................................27

    **G. Plaintiff's Alleged Violations of RESPA by Citizens are Barred as a Matter of Law**.29

**H. The Amended Complaint Should Be Dismissed Because the Payoff Statement Did Not Assess Excessive Late Fees Against Plaintiff**…………………………………………………31

**I. In the Alternative, This Court Should Enter a Stay Pending Resolution of the Foreclosure Action**……………………………………………………………………………..35

**IV. CONCLUSION**…………………………………………………………………………..36

# TABLE OF AUTHORITES

## Cases

*Baez v. U.S. Dept. of Justice*, 684 F.2d 999, 1003 (D.C. Cir. 1982)……………………………24

*Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412, 118 S.Ct. 1408 (1998)……………………….13

*Begala v. PNC Bank, Ohio, Nat. Ass'n*, 163 F.3d 948, 950 (6th Cir. 1998)……………………14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)……………………8

*Borkowski v. Fremont Inv. & Loan of Anaheim, Cal.*, 368 F.Supp.2d 822, 828 (N.D. Ohio 2005)…………………………………………………………………………………………..10

*Cassese v. Washington Mut., Inc.*, 711 F. Supp. 2d 261, 273 (E.D.N.Y. 2010)…………………22

*Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1039 (9th Cir. 2011)…………….3

*City of Spokane v. Fannie Mae*, 775 F.3d 1113, 1114 (9th Cir. 2014)…………………………...2

*Clemmer v. Key Bank Nat. Ass'n*, 539 F.3d 349, 353 (6th Cir. 2008)……………………………13

*Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236 (1976)………………………………………………………………………………………………30

*Commercial Law Corp., P.C. v. Fed. Deposit Ins. Corp.*, 2016 WL 4035508, *4 (July 28, 2016)………………………………………………………………………………………………24

*Corkins v. Tietmeyer*, Ohio Com.Pl. No. A-50918, 1936 WL 1766……………………………28

*Cty. of Fairfax v. FDIC*, No. 92-0858, 1993 WL 62247, at *4 (D.D.C. Feb. 26, 1993)………...22

*Doscher v. Menifee Circuit Court*, 75 Fed.Appx. 996, 997 (6th Cir. 2003)……………………...9

*Engle v. Shapert Const. Co.*, 443 F. Supp. 1383, 1388–89 (M.D. Pa. 1978)……………………23

*Evanto v. Fed. Nat. Mortg. Ass'n*, 814 F.3d 1295, 1298 (11th Cir. 2016)………………………16

*FHFA v. City of Chicago*, 962 F. Supp. 2d 1044, 1064 (N.D. Ill. 2013)………………………...21

*Finster v. U.S. Bank Natl. Assn.*, 245 F.Supp.3d 1304, 1315 (M.D. Fla. 2017)…………………27

*Ford v. New Century Mortg. Corp.*, 797 F.Supp.2d 862, 872 (N.D. Ohio 2011)………………..12

*Goolsby v. Deutche Bank*, No. 1:12-CV-00118, 2012 WL 1435735, *4 (N.D. Ohio 2012)……10

*Higgins v. BAC Home Loans Servicing LP*, No. 12-cv-183-KKC, 2014 WL 1332825, at *3 (E.D. Ky. Mar. 31, 2014)……………………………………………………………………………….4

*Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988)……………31

*Kelm v. Hyatt*, 44 F.3d 415, 419 (6th Cir. 1995)…………………………………………………9

*Kemp v. Seterus, Inc.,* 348 F.Supp.3d 443, 448 (D. Md. 2018)…………………………………16

*Kolano v. Bank of America, NA*, No. 5:13-CV-00832, 2014 WL 1117862 (N.D. Ohio 2014)…17

*Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1007 (11th Cir. 2016)……………………26

*Larkins v. Fifth Third Mtge. Co.*, 376 F.Supp.3d 784 (S.D. Ohio 2019)………………………..15

*Lightfoot v. Cendant Mortg. Corp.*, 137 S.Ct. 553 (2017)…………………………………………3

*Lumen Constr., Inc. v. Brant Constr. Co*., 780 F.2d 691, 695 (7th Cir. 1985)…………………31

*Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 718 n.4 (6th Cir. 2013)………………………16

*Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir. 1993)…………………………………………….…...8

*Middlesex Cty. Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515 (1982)………………………………………………………………………………………………9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 12, 103 S.Ct. 927 (1983)………………………………………………………………………………………………31

*Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989)…………………………………...31

*Nat'l Fair Hous. All. v. Fannie Mae*, No. C 16-06969 JSW, 2019 WL 3779531, at *6 (N.D. Cal. 2019)………………………………………………………………………………………………..21

*Nat'l Loan Inv'rs L.P. v. Town of Orange*, 204 F.3d 407, 410 (2d. Cir. 2000)…………………21

*Nev. ex rel. Hager v. Countrywide Home Loans Servicing, LP*, 812 F. Supp. 2d 1211, 1218 (D. Nev. 2011)………………………………………………………………………………………….21

*Nishiyama v. Dickson Cty., Tenn.,* 814 F.2d 277, 279 (6th Cir. 1987)………………………….…8

*Nixon v. Buckeye Bldg. & Loan Co.*, 18 Ohio Law Abs. 261, 263 (2nd Dist.1934)……………28

*O'Neill v. Coughlan*, 511 F.3d 638, 643 (6th Cir. 2008)…………………………………………9

*Perrone v. Gen. Motors Acceptance Corp.*, 232 F.3d 433, 436–40 (5th Cir. 2000)……………..18

*Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 599 (D.C. Cir. 2017), *cert. denied*, 138 S. Ct. 978 (2018)……………………………………………………………………………………………….4

*Peters v. Jim Lupient Oldsmobile Co.*, 220 F.3d 915, 917 (8th Cir. 2000)……………………...18

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 713, 116 S.Ct. 1712 (1996)…………………..30

*Rck Invest. Co. v. Centerville Land Investments Ltd*, 2nd Dist. Montgomery No. 7804, 1982 WL 3828, *2……………………………………………………………………………………………28

*Robertson v. U.S. Bank, N.A.*, 831 F.3d 757, 763 (6th Cir. 2016)………………………………25

*Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998)…………………………………30

*Rosselot v. Heimbrock*, 54 Ohio App.3d 103, 106, 561 N.E.2d 555, 559 (12th Dist.1988)……..28

*S/N1 Reo Ltd. Liability Co. v. City of New London ex rel. Ballestrini*, 127 F. Supp. 2d 287, 292 (D. Conn. 2000)…………………………………………………………………………………22

*Sanders v. Jackson*, 209 F.3d 998, 1004 (7th Cir. 2000)…………………………………………..24

*Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008)…………………………..12

*Stout v. J.D. Byrider*, 228 F.3d 709, 718 (6th Cir. 2000)…………………………………………...18

*Sutliff v. Cty. Sav. & Loan Co.*, 533 F. Supp. 1307, 1313 (N.D. Ohio 1982)……………………23

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008)…………………………………………………………………………………………8

*Town of Babylon v. FHFA*, 699 F.3d 221, 225 (2d Cir. 2012)…………………………………3

*Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir. 2001)………………………….…18

*United States v. Petroff-Kline*, 557 F.3d 285, 296 (6th Cir. 2009)………………………….…..18

*United States v. Witherspoon*, 211 F.2d 858, 861 (6th Cir. 1954)……………………………23

*V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012)………………………12

*Vallies v. Sky Bank*, 591 F.3d 152, 157 (3d Cir. 2009)…………………………………………18

*Vincent v. The Money Store*, 736 F.3d 88, 109 (2d Cir. 2013)…………………………………16

*Watts v. Burkhart*, 854 F.2d 839, 844–48 (6th Cir. 1988)………………………………………10

*Whittaker v. Wells Fargo Bank, N.A.*, 2014 WL 5426497, *8 (Oct. 23, 2014)…………………27

*Will v. Calvert Fire Ins. Co.,* 437 U.S. 655, 98 S.Ct. 2552 (1978)………………………………31

*Williams v. Wells Fargo Bank, N.A.*, 560 Fed.Appx. 233, 241–42 (5th Cir. 2014)……………..27

*Willis v. Chase Home Fin., LLC*, N.D. Ohio No. 5:10 CV 1494, 2010 WL 3430712, *2………10

*Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746 (1971)……………………………………………9

## Statutes

15 U.S.C.A. 1641(f)……………………………………………………………………………..17

12 U.S.C.A. 1641(g)……………………………………………………………………………..17

12 U.S.C.A. 2605(e)(2)…………………………………………………………………………26, 27

12 U.S.C.A. 2605(k)(1)(C)………………………………………………………...25, 26

12 U.S.C. § 1716(1), (4)………………………………………………………………3

12 U.S.C. § 1825(b)(3)……………………………………………………………21, 22

12 U.S.C.§ 2601………………………………………………………………………..7

12 U.S.C. § 4511……………………………………………………………………….3

12 U.S.C. 4617………………………………………………………………………...1

12 U.S.C. § 4617(a)(2)…………………………………………………………………3

12 U.S.C. § 4617(j)…………………………………………………………………...20

12 U.S.C. §§ 4617(b)(2)(A)(i), (b)(2)(B)(i)………………………………………….3

12 U.S.C. § 4617(f)…………………………………………………………………4, 10

12 U.S.C. § 4617(j)…………………………………………………………………...20

15 U.S.C. § 1601(a)………………………………………………………………....13

15 U.S.C. § 1602(g)………………………………………………………………....15

15 U.S.C. § 1602(g)………………………………………………………………....15

15 U.S.C. § 1602(v)………………………………………………………………….25

15 U.S.C. §§ 1631, 1632, 1635, 1638……………………………………………….13

15 U.S.C. § 1638……………………………………………………………………24, 25

15 U.S.C. § 1638(b)…………………………………………………………………....16

15 U.S.C. § 1638(b)(1)………………………………………………………………....16

15 U.S.C § 1638(e)(7)………………………………………………………………24, 25

15 U.S.C. § 1635……………………………………………………………………24, 25

15 U.S.C. 1635(a)…………………………………………………………………..24, 25

15 U.S.C. § 1639(g)……………………………………………6, 7, 14, 15, 16, 17, 23,25, 29

15 U.S.C. § 1640(a)………………………………………………………17, 18, 22, 23

15 U.S.C. § 1640(A)(1)…………………………………………………………....17, 18

15 U.S.C. § 1640(a)(3)……………………………………………………………24, 25

15 U.S.C. § 1640(a)(2)……………………………………………………………22, 23

15 U.S.C.A. § 1692……………………………………………………………………7

## Rules

Fed. Civ. R. 12(b)……………………………………………………….…………..8

Fed. Civ. R. 12(b)(6)…………………………………………………………...1, 8

## Regulations

12 C.F.R.  1024.35(b)(5)–(6)………………………………………………...25, 26

12 C.F.R. 1024.35(a)–(e)……………………………………………………...26

12 C.F.R. 1024.35(e)(1)(i)(B)………………………………………………27

12 C.F.R. 1025.35(e)(3)(i)(C)………………………………………………26

12 C.F.R. § 1026.36(c)(3)…………………………………………..6, 7, 14, 26, 30

**MEMORANDUM IN SUPPORT OF**

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Plaintiff has asserted numerous claims against the Defendants, all with the apparent hope that he can avoid an entry of a judgment and decree in a foreclosure action currently pending against him ("Foreclosure Action") in the Cuyahoga County Common Pleas Court ("Cuyahoga County"). As with any foreclosure proceeding, the issues of the enforceability of the promissory note ("Note") and mortgage ("Mortgage") and the amount owed on the Note is at issue before Cuyahoga County. So too are the claims that Plaintiff asserts in this matter, which have been pled as defenses to the Foreclosure Action.

Plaintiff nevertheless asks this Court to enter a declaratory judgment on the issue of what is owed on the Note. He also asserts a number of other claims against the Defendants, such as violations of TILA and RESPA and breach of contract, all of which either seek to prevent enforcement of the Note and Mortgage or obtain a money judgment to set off any amounts that he may owe on the loan ("Loan"). None of the claims have any merit as a matter of law. Further, because the issues before this Court are substantively identical to those in the pending state court Foreclosure Action, federal determination is improper. The Amended Complaint should be dismissed with prejudice. Alternatively, the Court should stay pending resolution of the state court Foreclosure Action.

## I. FACTS

### A. Fannie Mae and Its Servicers

Congress chartered Fannie Mae to facilitate the nationwide secondary mortgage market, and thereby to enhance the equitable distribution of mortgage credit throughout the nation. *See City of Spokane v. Fannie Mae*, 775 F.3d 1113, 1114 (9th Cir. 2014). Fannie Mae purchases residential mortgages from banks, repackages them for sale as mortgage-backed securities, and

guarantees these securities by promising to make investors whole if borrowers default.  *See Lightfoot v. Cendant Mortg. Corp.*, 137 S.Ct. 553 (2017).  Fannie Mae and the Federal Home Loan Mortgage Corporation ("Freddie Mac," and together with Fannie Mae, the "Enterprises") together own millions of mortgages nationwide, including in Ohio.  In 2012, "the value of the combined debt and mortgage-related assets of [the Enterprises] along with the Federal Home Loan Banks … exceed[ed] $5.9 trillion" nationwide, making them "the dominant force in the market." *Town of Babylon v. FHFA*, 699 F.3d 221, 225 (2d Cir. 2012).  Such activities "provide stability in the secondary market for residential mortgages" and "promote access to mortgage credit" by "increasing the liquidity of mortgage investments and improving the distribution of investment capital available for residential mortgage financing."  12 U.S.C. § 1716(1), (4).

Fannie Mae does not directly manage individual mortgage relationships, such as day-to-day borrower interactions.  Instead, Fannie Mae contracts with servicers to act on its behalf; in that role, servicers often appear as record beneficiaries of Fannie Mae's deeds of trust.  *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1039 (9th Cir. 2011) (describing servicers' role).

### B.    FHFA and Fannie Mae in Conservatorship.

On July 30, 2008, Congress passed the Housing and Economic Recovery Act of 2008 ("HERA"), which established FHFA as an independent federal agency with regulatory and oversight authority over Fannie Mae, Freddie Mac, and the Federal Home Loan Banks.  Pub. L. No. 110-289, 122 Stat. 2654 (codified as 12 U.S.C. § 4511 *et seq*.).  On September 6, 2008, FHFA placed the Enterprises into conservatorships "for the purpose of reorganizing, rehabilitating, or winding up [their] affairs."  12 U.S.C. § 4617(a)(2).  Upon inception of conservatorship, FHFA "immediately succeed[ed]" by operation of law to "all rights, titles, powers, and privileges of" Fannie Mae, and was authorized to "take over the assets of and operate" Fannie Mae.  See 12 U.S.C. §§ 4617(b)(2)(A)(i), (b)(2)(B)(i).  Congress then authorized the Conservator "to undertake

extraordinary economic measures" out of a concern that "a default by Fannie and Freddie would imperil the already fragile national economy." *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 599 (D.C. Cir. 2017), *cert. denied*, 138 S. Ct. 978 (2018).

To provide the Conservator with the broadest possible latitude to operate the Enterprises and preserve and conserve their assets without interference, Congress expressly granted FHFA an array of powers, privileges, and exemptions from otherwise applicable laws when acting as Conservator. For example, consistent with other financial institution conservatorship and receivership statutes, Congress precluded judicial review, as HERA states that "no court may take any action to restrain or affect the exercise of powers or functions of the Agency as a conservator or a receiver." 12 U.S.C. § 4617(f). Additionally, HERA also protects FHFA as Conservator— and therefore the entities operating under its conservatorship—against being "liable for any amounts in the nature of penalties or fines." *Id.* § 4617(j)(4) ("Penalty Bar").

Because FHFA as Conservator has succeeded to Fannie Mae's assets and rights, HERA protects Fannie Mae and its servicers to the *same* extent that it protects the Conservator. *Higgins v. BAC Home Loans Servicing LP*, No. 12-cv-183-KKC, 2014 WL 1332825, at *3 (E.D. Ky. Mar. 31, 2014) ("By prohibiting the imposition of fines and penalties on the Agency 'in any case in which the Agency is acting as a conservator or a receiver,' HERA necessarily prohibits the imposition of fines and penalties on Fannie Mae also."). This plain and unambiguous statutory language makes it clear that Plaintiff may not impose any penalty or fine on Fannie Mae or its servicer while Fannie Mae remains in conservatorship.

C.        History of Plaintiff's Loan.

The Amended Complaint alleges that on December 21, 2002, Plaintiff borrowed One Hundred Thousand, Five Hundred Dollars ($100,500) from Charter One Bank, N.A.[1] which was evidenced by the Note and secured by the Mortgage on the property located at 5980 Mayland Avenue, Mayfield Heights, Ohio, 44124.  Doc. No. 19 ("Am. Compl.") ¶ 72.  Plaintiff alleges that pursuant to the terms of the Note, he was required to make payments on the Loan in the amount of Six Hundred Thirty-Two Dollars and Twenty-Six Cents ($632.26) on the first day of each month ("Monthly Payment").  Am. Compl. ¶ 76.  If such payment was not made timely, then a late fee could be assessed in the amount of five percent (5%) of the amount of the overdue principal and interest ("Late Fee" or "Late Fees").  Am. Compl. ¶ 77.

Plaintiff concedes that a failure to make a Monthly Payment constitutes a default of the terms of the Note.  Am. Compl. ¶ 78. Plaintiff also *admits* that he failed to make his Monthly Payments in August and September 2018.  *Id.* ¶ 80.  He further admits that as of August 2018 that he was in default of the terms of the Note.  *Id.*  As a result of having defaulted upon the Note, on September 5, 2018, Plaintiff received a letter from Citizens One Home Loans[2] advising him that the Loan was in default and that he had breached the terms of the Note for failing to make the Monthly Payments.  *Id.* ¶ 81; *Id.* Ex. 6 ("Default Letter").  The Default Letter warned that if the amount due was not paid within thirty-five (35) days of the date of the Default Letter ("Cure Date"), that Citizens *could* exercise its option to accelerate the Loan and institute foreclosure proceedings against him.  *Id.* Ex. 6.  Despite having received the Default Letter, Plaintiff *admits* that he failed to make any further payments to the Loan.  Am. Compl. ¶ 82.

---

[1] Citizens Bank, N.A. is the successor organization to Charter One Bank, N.A.  Am. Compl. Ex. 3.
[2] Although not specifically alleged in the Complaint, Citizens Home Loans is a brand name of Citizens Bank, N.A. *See* Am. Compl. Ex. 3.

As discussed in further detail below, on or about April 3, 2019, Citizens filed a Complaint in Foreclosure ("Foreclosure Complaint") against Plaintiff in the Foreclosure Action known as *Citizens Bank, N.A. v. Patrick Trivison, et al.,* Case No. CV-19-913410.  *Id.* ¶ 85.

On September 6, 2019, Plaintiff, through his counsel, sent a letter to Citizens seeking a payoff balance of the Loan.  Am. Compl. Ex. 7.  The Amended Complaint alleges that Citizens sent Plaintiff a Payoff Statement on October 7, 2019 ("Payoff Statement").  Am. Compl. ¶ 86.  The Payoff Statement included late fees ("Alleged Improper Charges") which Plaintiff alleges Citizens was prohibited from assessing under the terms of the Note.  Am. Compl. ¶¶ 88–89.

After receipt of the Payoff Statement, on February 3, 2020, Plaintiff, through undersigned counsel, sent to Citizens a Notice of Error, Am. Compl. Ex. 2, ("NOE") asserting that Citizens, acting on behalf of Fannie Mae, erred in the servicing of the Loan by imposing Late Fees in contravention of the terms of the Note, thereby violating 15 U.S.C. § 1639(g) and 12 C.F.R. § 1026.36(c)(3).  Am. Compl. ¶ 92; NOE.  Notably, the NOE focused on the imposition of Late Fees in the Foreclosure Action and did ***not*** assert any error regarding the Payoff Statement.  *See* NOE.

Plaintiff alleges that Citizens responded to the NOE on March 2, 2020, and provided an explanation as to why the late fees that were charged were not in error ("March Letter").  *Id.* ¶ 95; NOE.  Plaintiff disagrees with the response he received to the March Letter from Citizens.

D.      **The Pending Foreclosure Action.**

On or about April 3, 2019, Citizens filed the Foreclosure Complaint against Plaintiff in the Foreclosure Action known as *Citizens Bank, N.A. v. Patrick Trivison, et al.,* Case No. CV-19-913410.  *Id.* ¶ 85.  In the Foreclosure Action, Citizens seeks a judgment and decree in foreclosure against Plaintiff as a result of his default in payment as required by the Note and Mortgage.  In

response to the Foreclosure Complaint, Plaintiff filed an Answer on September 24, 2019, where

he specifically denied that the Loan was in default and raised the following defenses:

> 14. Plaintiff [Citizens] has breached the agreement, directly or indirectly, and is thereby not entitled to relief as requested.

> 15. Plaintiff and/or Plaintiff's servicing agent may have violated 12 U.S.C.§ 2601 *et seq.*

> \* \* \*

> 17. Claims for recoupment and/or set-off available may exist under the federal Fair Debt Collection Practices Act, 15 U.S.C.A. § 1692 *et seq.,* Truth in Lending Act, and the Consumer Sales Practice Act, RC. § 1345 *et seq.*

> \* \* \*

> 19. The balance claimed may not be accurate, and therefore a complete accounting of payments is warranted.[3]

The Foreclosure Action remains pending and a Case Management Conference is scheduled for

June 6, 2022.

**E. Plaintiff's Claims Against Defendants.**

On April 2, 2020, Plaintiff filed a Complaint in this matter on behalf of himself and

similarly situated individuals alleging a single claim that Fannie Mae "is vicariously liable for

violations of 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3) committed by its servicers as alleged

in this matter." Compl. ¶ 67. Despite referencing Citizens throughout the Complaint and having

filed the Answer in the pending Foreclosure Action, no claims were asserted by Plaintiff against

Citizens. In response to the Complaint, Fannie Mae filed a Motion to Dismiss, setting forth legal

---

[3] A copy of the Answer was previously attached to Defendants' Brief in Opposition to Motion for Leave to Amend Complaint as Ex. 1, Doc 13. Defendants request that the Court take judicial notice of the Answer. *Chase Bank U.S.A., N.A. v. City of Cleveland*, 695 F.3d 548, 553 n.2 (6th Cir. 2012) ("We can take judicial notice of developments in related 'proceedings in other courts of record.'") (quoting *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 n.5 (6th Cir. 2005)).

arguments as to why the Complaint failed to state a claim upon which relief can be granted pursuant to Fed. Civ. R. 12(b).  Doc. No. 8.

Rather than oppose any of the arguments in the Motion to Dismiss, Plaintiff instead sought leave from this Court to amend its Complaint to add new claims against Fannie Mae and to add Citizens as a party to the case.  This Court granted Plaintiff's Motion for Leave to Amend the Complaint on April 18, 2022.  Doc. No. 18.  For the reasons that follow, Defendants request that this Court dismiss the Amended Complaint, with prejudice.

## II.  THE STANDARD WHEN THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

The purpose of Fed. Civ. R. 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true.  *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir. 1993), citing *Nishiyama v. Dickson Cty., Tenn.,* 814 F.2d 277, 279 (6th Cir. 1987).  In deciding a motion to dismiss under Fed. Civ. R. 12(b)(6), a court presumes the complaint's factual allegations are true and draws all reasonable inferences in the plaintiff's favor.  *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).  To survive a dismissal, a complaint "must present 'enough facts to state claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)).  In other words, the allegations "must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp.*, 550 U.S. at 555.

Applying this standard to the case at hand, it is clear the Amended Complaint fails to state a claim upon which relief can be granted.  Accordingly, this Court should dismiss the Amended Complaint with prejudice.

III.     **THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIMS OR IN THE ALTERNATIVE STAY THIS MATTER UNTIL A FINAL ORDER IS ISSUED IN THE FORECLOSURE ACTION.**

Even if this Court assumes that all the allegations of the Amended Complaint are true, Plaintiff cannot sustain his claims against the Defendants.  The *Younger* abstention doctrine precludes that Court from entering a declaratory judgment as to whether late fees are able to be assessed on the Loan, as the issue of the amounts due by Plaintiff on the Note are currently pending in the Foreclosure Action; indeed, the *Younger* abstention doctrine entirely precludes federal resolution of the instant action, given the pending Foreclosure Action in state court.  Moreover, with regard to the other claims, Plaintiff admits facts that defeat his claims when applied to the law, and Plaintiff omits facts that are necessary to properly plead a cognizable cause of action. Either way, the result is the same.  Plaintiff's claims fail as a matter of law and the Amended Complaint should be dismissed.  Alternatively, this Court should apply the *Colorado River* abstention doctrine and stay this matter until the Foreclosure Action is completed.

A.  **The *Younger* Doctrine Applies, and This Court Should Abstain from Ruling on the Declaratory Judgment Claim.**

It is well settled that a federal court may not grant injunctive or declaratory relief that would interfere with state judicial proceedings pending at the time that a federal complaint is filed. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746 (1971) ; *O'Neill v. Coughlan*, 511 F.3d 638, 643 (6th Cir. 2008).  This maxim, known as the *Younger* Doctrine, applies where: (1) state proceedings are on-going; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal questions.  *Doscher v. Menifee Circuit Court*, 75 Fed.Appx. 996, 997 (6th Cir. 2003) *citing Middlesex Cty. Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515 (1982) and *Kelm v. Hyatt*, 44 F.3d 415, 419 (6th Cir. 1995).  The *Younger* Doctrine applies irrespective of whether the state court proceeding is

criminal, quasi-criminal, or civil in nature, so long as federal court intervention "unduly interferes with the legitimate activities of the State." *Younger*, 401 U.S. at 44.

The target of an ongoing state action involving important state matters cannot interfere with the pending state action by maintaining a parallel federal action involving claims that could have been raised in the state case. *Borkowski v. Fremont Inv. & Loan of Anaheim, Cal.*, 368 F.Supp.2d 822, 828 (N.D. Ohio 2005) *citing Watts v. Burkhart*, 854 F.2d 839, 844–48 (6th Cir. 1988). Foreclosure and property actions implicate an important state interest. *Doscher*, 75 Fed. Appx. 996 (finding that *Younger* abstention was required in plaintiff's challenge to a state court foreclosure action). Additionally, Plaintiff's attempt to end-run the state foreclosure proceeding should be rejected because, under HERA, "no court may take any action to restrain or affect the exercise of powers or functions of the Agency as a conservator or a receiver." 12 U.S.C. § 4617(f).

Courts, including this Court, have determined that the *Younger* Doctrine applies where a defendant in a foreclosure action in state court files a parallel case in federal court which raises claims that could have been brought in the state court action. *Goolsby v. Deutche Bank*, No. 1:12-CV-00118, 2012 WL 1435735, *4 (N.D. Ohio 2012); *Doscher*, 75 Fed. Appx. at 997; *Willis v. Chase Home Fin., LLC*, N.D. Ohio No. 5:10 CV 1494, 2010 WL 3430712, *2; *Borkowski*, 368 F.Supp.2d at 828. In those instances, dismissal of an action was appropriate. *Doscher,* 75 Fed. Appx. at 997*; Goolsby*, 2012 WL 1435735, at *4; *Willis*, 2010 WL 3430712, at *2 (dismissal of plaintiff's federal action was appropriate pursuant to *Younger* Doctrine as there was an on-going foreclosure proceeding, it involved a state interest and the party could raise his challenges in the foreclosure proceeding); *Borkowski*, 368 F.Supp.2d at 828 (dismissal of action based in part upon the application of the *Younger* Doctrine).

Indeed, this Court has applied the *Younger* Doctrine to dismiss federal actions under substantively-similar circumstances, including those in which the plaintiff filed suit in federal court, alleging RESPA and TILA violations, while an underlying state court foreclosure action remained pending.  In *Goolsby*, the plaintiff filed a complaint in this Court asserting claims against Deutsche Bank for violations of RESPA, TILA and the Fair Debt Collections Practices Act.  2012 WL 1435735 at *1.  At the time of the federal complaint, a foreclosure action was already pending against the plaintiff in Cuyahoga County Court.  *Id.*  Nevertheless, the plaintiff in *Goolsby* asked that this Court enjoin the enforcement of the judgment entered against him in the Cuyahoga County Court.  *Id.*  In dismissing the complaint, this Court analyzed the three *Younger* Doctrine abstention elements and determined that abstention was warranted.[4]  *Id.* at *3–4.  The foreclosure case in Cuyahoga County was pending, it implicated important state interests and the foreclosure proceeding provided the plaintiff in *Goolsby* with an adequate opportunity to raise his federal claims.  *Id.*  ("The requirements of *Younger* are satisfied and this Court must abstain from interfering in any pending state court criminal action against the Plaintiff.").

As this case is substantively-identical to *Goolsby*, this Court should similarly apply the *Younger* Doctrine and dismiss the complaint.  As pled in the Amended Complaint, a Foreclosure Action against Plaintiff is proceeding in the Cuyahoga County Court.  Doc. No. 11, Ex. A ¶ 85.  The Foreclosure Action implicates important state interests as a matter of law.  Plaintiff has been given adequate opportunity to raise his defenses in the Foreclosure Action, and indeed, his defenses in the Foreclosure Action overlap with the claims against Defendant in this matter.  *See* Doc No. 13, Ex. 1.  Plaintiff asks this Court determine whether the Late Fees were properly assessed, but such a determination would interfere with Cuyahoga County's ability to perform its

---

[4] Notably, the fact that the plaintiff in *Goolsby* was seeking to enjoin the foreclosure proceeding did not enter into the analysis of the court in their analysis that the *Younger* doctrine applied.

judicial function and determine whether the Note and Mortgage are enforceable and what amounts are owed on the Loan.

Accordingly, this case meets all the criteria set forth in the *Younger* Doctrine. Because Plaintiffs improperly seek federal court resolution of issues pending in the state court Foreclosure Action, this Court cannot properly adjudicate the action, and dismissal is proper, notwithstanding the inclusion in the Amended Complaint is futile.

### B. Plaintiff Cannot Sustain a Claim for Breach of Contract Against the Defendants.

In the Amended Complaint, Plaintiff alleges that Defendants are liable for breach of contract for imposing the Alleged Improper Charges.  Under Ohio law, the elements of a breach of contract claim are: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach. *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012) *citing Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008).  Where a party fails to plead that they have performed under the contract, the breach of contract claim is insufficiently pleaded and subject to dismissal.  *Ford v. New Century Mortg. Corp.*, 797 F.Supp.2d 862, 872 (N.D. Ohio 2011).

In the Amended Complaint, Plaintiff pleads that, "Plaintiff's and Class members' loans are legally binding and enforceable contracts with either (or both) of Defendants." Am. Compl. ¶ 119. However, Plaintiff fails to identify what contract forms the basis of his breach of contract claim or what specific clause(s) of such contracts were allegedly breached.  As admitted by Plaintiff, there are multiple contracts, including the Note, Mortgage and Loan Modification Agreement which exist among the parties.

Notwithstanding and irrespective of which of these "loan contracts" Plaintiff is relying on, he cannot prove that he performed under any of them.  In fact, Plaintiff admits in the Amended Complaint that he did not perform his obligations under such contracts.  He alleges:

80.  Plaintiff failed to make his "monthly payments" on his loan in August and September 2018. As such, Plaintiff was in default on his loan beginning on August 1, 2018. *See*, Plaintiff's Note, ¶ 6(B);

\*　　　\*　　　\*

82.  Plaintiff did not make any further payments on his loan after receiving the Default Letter. As a result, Citizens—acting on behalf of FNMA—accelerated Plaintiff's loan in or about October 2018.

Finally, Plaintiff alleges that, "Plaintiff and Class members have been harmed by Defendants' breach, as they have already paid, or will soon be required to pay, the Improper Late Fees in connection with reinstatement, refinancing, loan modifications, foreclosure, during bankruptcy proceedings, etc. does not have any damages which arise from Defendants' alleged breach of contract." Am. Compl. ¶ 22.  However, Plaintiff does not allege that he paid the Alleged Improper Charges.  To the contrary, he admits that he did not pay them.  *Id.* ¶ 82.  Plaintiff has no damages proximately caused by the alleged breach of the "loan contracts."  Accordingly, Plaintiff fails to plead a proper claim for breach of contract, and the claim should be dismissed.

## C. Fannie Mae Is Not Directly or Vicariously Liable for the Alleged Violation of TILA.

The United States Supreme Court has acknowledged that the purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."  *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412, 118 S.Ct. 1408 (1998) (quoting 15 U.S.C. § 1601(a)).  In keeping with this purpose, TILA requires creditors to "provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights."  *Id.* (citing 15 U.S.C. §§ 1631, 1632, 1635, 1638).  It is a remedial statute and should be given "a broad, liberal construction in favor of the consumer."  *Clemmer v.*

*Key Bank Nat. Ass'n*, 539 F.3d 349, 353 (6th Cir. 2008); *Begala v. PNC Bank, Ohio, Nat. Ass'n*, 163 F.3d 948, 950 (6th Cir. 1998).

The statute at issue in this matter is 15 U.S.C. § 1639(g), which provides in pertinent part, "[a] creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower."

The regulation that implements 15 U.S.C. § 1639(g) provides as follows:

> (3) Payoff statements.  In connection with a consumer credit transaction secured by a consumer's dwelling, a creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date.  The statement shall be sent within a reasonable time, but in no case more than seven business days, after receiving a written request from the consumer or any person acting on behalf of the consumer.  When a creditor, assignee, or servicer, as applicable, is not able to provide the statement within seven business days of such a request because a loan is in bankruptcy or foreclosure, because the loan is a reverse mortgage or shared appreciation mortgage, or because of natural disasters or other similar circumstances, the payoff statement must be provided within a reasonable time.  A creditor or assignee that does not currently own the mortgage loan or the mortgage servicing rights is not subject to the requirement in this paragraph (c)(3) to provide a payoff statement.

12 C.F.R. § 1026.36(c)(3).

Thus, in order to be entitled to relief, the Plaintiff must be able to show that Fannie Mae is liable for violating 15 U.S.C. § 1639(g) and 12 C.F.R. § 1026.36(c)(3), either directly or vicariously for the actions of Citizens.  Plaintiff cannot do so. As a result, the Amended Complaint must be dismissed with prejudice.

**1. Fannie Mae Is Not a Creditor and Therefore Cannot Violate 15 U.S.C. § 1639(g).**

To be directly liable for a violation of 15 U.S.C. § 1639(g), a person or entity must be a creditor or servicer as defined by TILA.  TILA defines a creditor as a person who both (1) regularly extends ... consumer credit ..., and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable ...15 U.S.C. § 1602(g).  Courts have refused to apply agency principles to render someone a "creditor" who otherwise does not meet the definition for purposes of TILA.  *Larkins v. Fifth Third Mtge. Co.*, 376 F.Supp.3d 784 (S.D. Ohio 2019).

Plaintiff does not allege that Fannie Mae originated the Loan, nor does he not allege that Fannie Mae is the servicer of the Loan.  To the contrary, Plaintiff recognizes that Citizens is the servicer of the Loan.  Am. Compl. ¶ 145.  Similarly, Plaintiff does not allege that Fannie Mae regularly extends consumer credit, nor does he allege that Fannie Mae is the entity to whom the debt arising from the consumer credit transaction is initially payable.  15 U.S.C. § 1602(g).  Indeed, the Note attached to the Amended Complaint evidence that Citizens, not Fannie Mae, is the entity to which the debt was initially payable.  Am. Compl. Ex. 1.  Thus, Fannie Mae is not a creditor or servicer as defined by 15 U.S.C. § 1602(g), and Fannie Mae is not subject to 15 U.S.C. § 1639(g).

In addition, Plaintiff cannot deem Fannie Mae a creditor by alleging that Citizens, Fannie Mae's servicer and the entity to whom the debt is owed, is Fannie Mae's agent.  Am. Compl. ¶ 148.  Such an argument has been rejected as a matter of law.  *Larkins*, 376 F.Supp.3d at 790.  Because Fannie Mae is not a creditor, 15 U.S.C. § 1639(g) does not apply.

**2. Fannie Mae Is Not Liable for the Alleged Violations of TILA as Loan Assignee.**

Just as Fannie Mae is not liable for a violation of 15 U.S.C. § 1639(g) as a creditor or servicer, Fannie Mae is also not liable for the actions of Citizens for providing the alleged inaccurate Payoff Statement by virtue of its capacity as the assignee of the Loan.

A borrower has the right to bring a private civil action against an assignee of a creditor for a violation of 15 U.S.C. § 1639(g) if (1) the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement provided in connection with a consumer credit transaction; and, (2) the assignment to the assignee was voluntary.  No private civil action can be maintained against an assignee of a creditor where it cannot be established that a there is a violation apparent on the face of a disclosure statement.  *Kemp v. Seterus, Inc.,* 348 F.Supp.3d 443, 448 (D. Md. 2018); *Vincent v. The Money Store*, 736 F.3d 88, 109 (2d Cir. 2013).

The term "disclosure statement" is not defined in 15 U.S.C. § 1639(g).  Courts have looked to other statutes within TILA define a "disclosure statement" for purposes of 15 U.S.C. § 1639(g).  *Evanto v. Fed. Nat. Mortg. Ass'n*, 814 F.3d 1295, 1298 (11th Cir. 2016).  In keeping with such other statutes, a "disclosure statement" has been defined as documents given to a consumer before the extension of credit.  *Id.; see* 15 U.S.C. § 1638(b)(1) (referring to disclosures that "shall be made before the credit is extended.").  Courts have determined that a payoff statement, which is provided only after the extension of credit to the consumer, does not qualify as a "disclosure statement" for purposes of 15 U.S.C. § 1639(g). *Id.; Kemp*, 348 F.Supp.3d at 448; *Vincent*, 736 F.3d at 109.

The allegations in the Amended Complaint preclude maintenance of this TILA claim against Fannie Mae and Citizens.  Plaintiff cites to the decision of *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 718 n.4 (6th Cir. 2013) for the proposition that a disclosure statement includes documents created after loan origination.  But *Marais* does not stand for such a proposition. Rather, *Marais* simply acknowledges in a footnote that some district courts in other circuits

determined that an assignee's requirement to provide contact information under 12 U.S.C.A. 1641(g) is a disclosure.[5]

Plaintiff also wrongly relies upon the decision *Kolano v. Bank of America, NA*, No. 5:13-CV-00832, 2014 WL 1117862 (N.D. Ohio 2014), for the proposition that Fannie Mae can be vicariously liable for the actions of its servicers.[6]  However, *Kolano* concerns vicarious liability for violations of 15 U.S.C.A. 1641(f), which is not at issue in this matter.

Here, Plaintiff alleges that Fannie Mae violated 15 U.S.C. § 1639(g) by virtue of Citizens providing him an inaccurate Payoff Statement.  There is no question based on the facts as pled that the Payoff Statement was given to Plaintiff after Citizens has extended the Loan to him.  Doc. No. 72 ¶ 87.  Thus, the Payoff Statement is not a disclosure statement as a matter of law and Plaintiff cannot maintain a cause of action against Fannie Mae for a violation of 15 U.S.C. § 1639(g).

**D. Plaintiff's Claim Fails Because He Cannot Show That He Suffered Any Actual Damages Pursuant to 15 U.S.C. § 1640(A)(1).**

Plaintiff's claim that Fannie Mae violated 15 U.S.C. § 1639(g) is barred.  Notwithstanding, even if such a claim were cognizable, Plaintiff is unable to recover any actual damages from Fannie Mae and Citizens.  Plaintiff has failed to plead that he detrimentally relied upon the Payoff

---

[5] Plaintiff also cites to the decision of *Hollenbeck v. Fed. Natl. Mtge. Assn.*, 2015 WL 11197740, *2 (Jan. 8, 2015) for the proposition that Fannie Mae, as an assignee, could be held "vicariously liable for a mortgage servicer's failure to properly respond to a TILA request for information" in the context of a violation of 15 U.S.C. 1639(g).  However, the Court did not make such a decision but rather permitted Hollenbeck to proceed on its claim against Fannie Mae because there is a split of authority as to the issue in the courts in Florida.

[6] In the Amended Complaint, Plaintiff also cites to the case of *Justice v. Ocwen Loan Servicing*, S.D. Ohio No. 2:13-CV-165, 2015 WL 235738, *13, n. 9 (S.D. Ohio 2015).  In *Justice*, the Court specifically dismissed the alleged violation of 15 U.S.C. 1639(g) and did not hold the lender vicariously liable for the actions of the servicer.  Plaintiff also cites to the decision of *Rinegard-Guirma v. Bank of America NA*, 2012 WL 1110071 (Apr. 2, 2012) which also concerns 15 U.S.C.A. 1641(f).

Statement and that such reliance caused damages.  In addition, he has failed to plead that any of his actual damages are related to the Payoff Statement.

In the Amended Complaint, Plaintiff seeks to recover actual damages pursuant to 15 U.S.C. § 1640(a)(1).  Am Compl. ¶ 68.  To sustain a claim for actual damages under TILA, a plaintiff must plead that they detrimentally relied upon the actions of the lender and that such reliance caused the alleged damages.  *United States v. Petroff-Kline*, 557 F.3d 285, 296 (6th Cir. 2009); *Stout v. J.D. Byrider*, 228 F.3d 709, 718 (6th Cir. 2000); *Vallies v. Sky Bank*, 591 F.3d 152, 157 (3d Cir. 2009); *In re Smith*, 289 F.3d 1155, 1157 (9th Cir. 2002); *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir. 2001) (*en banc*); *Perrone v. Gen. Motors Acceptance Corp.*, 232 F.3d 433, 436–40 (5th Cir. 2000); *Peters v. Jim Lupient Oldsmobile Co.*, 220 F.3d 915, 917 (8th Cir. 2000).  Plaintiff has failed to allege that he detrimentally relied in any way upon the Payoff Statement, such as by paying the total amount due on the Loan including the Alleged Improper Charges.

Instead, Plaintiff alleges in the Amended Complaint that he:

> …relied upon the accuracy of the Payoff Statements, insofar as they represented what Citizens—acting on its own behalf, and on behalf of FNMA and other lenders—was claiming to be the full balance of their loans.  In other words, while Plaintiff and NOE Subclass members may have known that the Payoff Statements reflected Improper Late Fees (and were therefore inaccurate), they relied on the Payoff Statements as an accurate reflection of the amounts that Citizens—acting on its own behalf, and on behalf of FNMA and other lenders—would require them to pay…

Am. Compl. ¶ 54.  While Plaintiff uses the term "relied" he fails to allege that he in any way detrimentally relied upon the Payoff Statements, or that his position worsened as a result of the reliance.  In fact, Plaintiff admits that he "may have known" that the Payoff Statement was inaccurate and therefore only relied on it to the extent that it was as a representation of what

Citizens thought was due on the Loan.  *Id.* ¶ 69, 163.  In other words, Plaintiff alleges that he did not rely upon the Payoff Statement in making decisions as to the Loan because he thought that it was inaccurate.

Nor did Plaintiff change his position on the Loan as a result of the Payoff Statement. Plaintiff admits that he failed to make any payments to the Loan after August 2018.  Thus, he did not pay the amounts included on the Payoff Statement.  In addition, Plaintiff admits in the Amended Complaint that he was evaluated for loss mitigation options, including the option to reinstate the Loan.  Accordingly, even if Plaintiff somehow "relied" on the Payoff Statement, he has failed to allege that such reliance was to his detriment.  In other words, Plaintiff did not rely on the Payoff Statement, much less detrimentally rely upon it.  Consequently, Plaintiff cannot sustain a claim of actual damages against Fannie Mae.

Plaintiff claims that he incurred actual damages in the form of (1) expenses for the issuance of the NOE to dispute the Late Fees included in the Payoff Statement and (2) deprivation from having a "concrete interest in the informed use of credit" for purposes of participation in loss mitigation efforts.  Am. Compl. ¶¶ 97–99.  However, a review of the Amended Complaint evidences that the Payoff Statement was not the proximate cause of his alleged actual damages. The NOE does not even reference the Payoff Statement.  Rather, it addresses the collection of Late Fees in the Foreclosure Proceeding.  In other words, the NOE bears no relationship to the Payoff Statement or any alleged errors therein, so the expenses and costs of the NOE were not incurred as the result of the Foreclosure Action and not the Payoff Statement.  Therefore, Plaintiff does not have any actual damages as a result of the NOE.

Likewise, contrary to the assertion of the Plaintiff, the inclusion of Late Fees in the Payoff Statement did not preclude him from having a "concrete interest in the informed use of credit."

The Payoff Statement did not influence his decision to enter into the Loan, as the Payoff Statement was sent to him seventeen years after the date of the Note.  Nor did the Payoff Statement prevent him from participating in loss mitigation efforts.  In fact, the documents attached to the Complaint show that Plaintiff sought out and was considered for loss mitigation options from Citizens months after receiving the Payoff Statement.  Am. Compl. Ex. 7.  Plaintiff was denied loss mitigation options because a loan modification would result in a higher monthly payment than he was currently paying.  Am. Compl. Ex. 3.  There is no allegation that the denial of a loan modification was caused by or in any way related to the Late Fees.  Moreover, Plaintiff was provided a Reinstatement Quote for consideration after the Payoff Statement.[7]  In sum, Plaintiff cannot show that the Payoff Statement was the cause of any of his alleged actual damages and his claim fails as a matter of law.

### E.  Plaintiff's Claim for Statutory Damages and Attorneys' Fees Are Barred by 12 U.S.C. § 4617(j).

Not only is Plaintiff unable to recover actual damages, but HERA also precludes Plaintiff from recovering statutory damages and attorneys' fees under TILA.  As described above, under HERA, Congress granted FHFA a broad array of powers, privileges, and exemptions from otherwise applicable laws when acting as Conservator.  *See supra* § I(B).  For example, the Penalty Bar protects FHFA as Conservator—and thus entities that operate under its conservatorship— against being "liable for any amounts in the nature of penalties or fines."  12 U.S.C. § 4617(j).  Here, Plaintiff seeks to impose liability upon Fannie Mae and Citizens for statutory damages and attorneys' fees, both of which are prohibited under the Penalty Bar for being "in the nature of penalties."  Consequently, Plaintiff has failed to state a claim upon which relief can be granted, and the Amended Complaint should be dismissed.

---

[7] Plaintiff has failed to assert any cognizable claim that the Reinstatement Quote was incorrect.

1. **The Penalty Bar Applies to Fannie Mae and Citizens and Therefore Precludes The Imposition of "Amounts in the Nature of Penalties or Fines."**

As discussed above, because FHFA as Conservator has succeeded to Fannie Mae's assets and rights, the Penalty Bar protects Fannie Mae and its servicers to the same extent that it protects the Conservator.  *See supra* § I(B).  This plain and unambiguous statutory language makes it clear that Plaintiff may not impose any penalty or fine on Fannie Mae or its servicer while Fannie Mae remains in conservatorship.  Indeed, every federal court with jurisdiction to decide the issue has reached the same conclusion.[8]  *See, e.g.*, *Higgins*, 2014 WL 1332825, at *3; *FHFA v. City of Chicago*, 962 F. Supp. 2d 1044, 1064 (N.D. Ill. 2013) (rejecting as "meritless" the argument that the Penalty Bar does not apply to Fannie Mae or its servicers while Fannie Mae is in conservatorship); *Nev. ex rel. Hager v. Countrywide Home Loans Servicing, LP*, 812 F. Supp. 2d 1211, 1218 (D. Nev. 2011) ("[U]nder conservatorship with the FHFA, Fannie Mae is statutorily exempt from taxes, penalties, and fines to the same extent that the FHFA is."); *Nat'l Fair Hous. All. v. Fannie Mae*, No. C 16-06969 JSW, 2019 WL 3779531, at *6 (N.D. Cal. 2019) ("[D]emands for penalties ... are barred by HERA regardless whether FHFA is a party in the case.").

Decisions applying the analogous and materially-identical statutory protection applicable to the Federal Deposit Insurance Corporation ("FDIC"), 12 U.S.C. § 1825(b)(3), confirm the point.[9]  For instance, the Second Circuit recognized that 12 U.S.C. § 1825(b)(3) prohibits the FDIC's liability for penalties or fines "without qualification."  *Nat'l Loan Inv'rs L.P. v. Town of Orange*, 204 F.3d 407, 410 (2d. Cir. 2000).  Similarly, the Ninth Circuit held that "[t]here is no

---

[8] One federal court reached a different conclusion in an outlier decision vacated for lack of jurisdiction, rendering that decision a legal nullity.  *Burke v. Fed. Nat'l Mortg. Ass'n*, 221 F. Supp. 3d 707 (E.D. Va. 2016), *vacated*, No. 3:16-cv-153, 2016 WL 7451624, at *1 (E.D. Va. Dec. 6, 2016) ("[T]he Court … was without jurisdiction to issue any prior opinion or order in this case.").

[9] The Penalty Bar mirrors the language of § 1825(b)(3), except that the Penalty Bar extends its protection to conservatorships as well as receiverships.

question that [12 U.S.C. § 1825(b)(3)] exempts the FDIC from penalties after it becomes the receiver." *In re Cnty of Orange*, 262 F.3d at 1022 (9th Cir. 2001).  District courts also concurred. *S/N1 Reo Ltd. Liability Co. v. City of New London ex rel. Ballestrini*, 127 F. Supp. 2d 287, 292 (D. Conn. 2000) (explaining that penalties are "barred from collection by 12 U.S.C. § 1825(b)(3)"); *Cassese v. Washington Mut., Inc.*, 711 F. Supp. 2d 261, 273 (E.D.N.Y. 2010) (finding "no indication that the FDIC is liable as receiver for penalties . . . assessed *after* the receivership commences." (emphasis in original); *Cty. of Fairfax v. FDIC*, No. 92-0858, 1993 WL 62247, at *4 (D.D.C. Feb. 26, 1993) (rejecting contention that § 1825(b)(3) exempts only "the FDIC *itself* from penalty assessment but not the [entity] for which the FDIC assumes receivership.").

Accordingly, while Fannie Mae remains under conservatorship, the Penalty Bar prohibits the imposition or assessment of any penalty or fine on Fannie Mae and its servicer.

**2. TILA's Statutory Damages are in the Nature of Penalties and are Thus Barred.**

As pled in the Amended Complaint, Plaintiff seeks to recover statutory damages pursuant to 15 U.S.C. § 1640(a)(2), which provides in pertinent part:

> **(a) Individual or class action for damages; amount of award; factors determining amount of award**
>
> Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, subsection (f) or (g) of section 1641 of this title, or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—
>
> *        *        *
>
> **(2)(A)** … (iv) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $400 or greater than $4,000; or

> **(B)** in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same creditor shall not be more than the lesser of $1,000,000 or 1 per centum of the net worth of the creditor.

The Sixth Circuit has defined a penalty as, "punishment, generally pecuniary, inflicted by a law" which has "no reference to the actual loss sustained by him who sued for its recovery." *United States v. Witherspoon*, 211 F.2d 858, 861 (6th Cir. 1954).  Such is the case for § 1640(a)(2).  By contrast, § 1640(a)(1) allows a consumer to recover "any actual damage" sustained.  The fact that Congress chose to provide actual damages in a separate provision suggests that Congress intended the additional damages in § 1640(a)(2)(A) to be a penalty for non-compliance.  Indeed, this Court has acknowledged that the imposition of damages under 15 U.S.C. § 1640(a)(2) for violations of TILA are "statutory penalties."  *Sutliff v. Cty. Sav. & Loan Co.*, 533 F. Supp. 1307, 1313 (N.D. Ohio 1982) (15 U.S.C. § 1640(a) provides that "any creditor" who fails to fulfill disclosure requirements to "'any person', is liable to 'such person' for the statutory penalty"); *see also Engle v. Shapert Const. Co.*, 443 F. Supp. 1383, 1388–89 (M.D. Pa. 1978) (referring to § 1640(a) as a penalty); *In re Marshall*, 970 F.2d 383, 385 (7th Cir. 1992) (recognizing "its characterization of [§ 1640(a)] as a penalty").

Plaintiff's sole cause of action is that Fannie Mae and Citizens are liable for violations of TILA, namely 15 U.S.C. § 1639(g), for allegedly failing to provide an accurate Payoff Statement.  Plaintiff thus seeks statutory damages pursuant to 15 U.S.C. § 1640(a)(2).  Such statutory damages are in the nature of penalties, and thus Plaintiff's claim against Fannie Mae and Citizens are barred.

### 3. Plaintiff's Demand for Attorneys' Fees are in the Nature of Penalties and are Thus Barred.

The Penalty Bar also precludes Plaintiff's demand for attorney's fees to the same extent

that it precludes relief for the underlying claim.  *See supra* § I(B).  As with TILA's statutory damages, courts have repeatedly described attorneys' fees as being penal or punitive in nature. *See, e.g.*, *In re Sterten*, 546 F.3d 278, 280 (3d Cir. 2008) (describing attorneys' fees as part of the penalty under the Truth in Lending Act); *Sanders v. Jackson*, 209 F.3d 998, 1004 (7th Cir. 2000) (in the context of the Fair Debt Collection Practices Act, "attorneys' fees are punitive in the broad sense of the term"); *Baez v. U.S. Dept. of Justice*, 684 F.2d 999, 1003 (D.C. Cir. 1982) (statutes permitting attorneys' fees "embody the notions that assessment of attorneys' fees against the losers may be a form of penalty"); *Commercial Law Corp., P.C. v. Fed. Deposit Ins. Corp.*, 2016 WL 4035508, *4 (July 28, 2016).  This penal or punitive character renders attorneys' fee awards as being in the nature of penalties.  Accordingly, the Penalty Bar prevents Plaintiff's recovery of attorneys' fees against Fannie Mae and Citizens.

**F.  Plaintiff Cannot Rescind The Loan.**

In addition to the monetary damages, Plaintiff seeks rescission of the Loan.  Relief in the form of rescission is addressed in 15 U.S.C. § 1640(a)(3), which provides, "in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 or 1638(e)(7) of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court."  Thus, in order to be entitled to rescind the Note, Plaintiff must show that his claim will be successful as pled in the Amended Complaint to have the right to rescission under 15 U.S.C. § 1635 or § 1638(e)(7).

For all the reasons set forth above, Plaintiff cannot sustain a successful action for liability against Fannie Mae in this case.  Thus, Plaintiff must establish that he is entitled to a right of rescission pursuant to 15 U.S.C. § 1635 or § 1638.  Pursuant to 15 U.S.C. § 1635(a), "in the case of any consumer credit transaction ... [involving a mortgage] the obligor shall have the right to

rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later." 15 U.S.C. § 1635(a).  In determining what constitutes a "material disclosure," the Sixth Circuit has analyzed the definition as contained in 15 U.S.C. § 1602(v),[10] and held that the definition is an exhaustive list of disclosures governed by the terms of 15 U.S.C. § 1635(a). *Robertson v. U.S. Bank, N.A.*, 831 F.3d 757, 763 (6th Cir. 2016).  Thus, a disclosure which is not listed in 15 U.S.C. § 1602(v) is not implicated by 15 U.S.C. § 1635.  *Id*.  A plain reading of 15 U.S.C. § 1602(v) evidences that it does not include payoff statements and/or disclosures under 15 U.S.C. § 1639(g).  Thus, Plaintiff cannot base a claim for rescission on an alleged failure to provide an accurate Payoff Statement under 15 U.S.C. § 1640(a)(3).

Likewise, 15 U.S.C. § 1638(e)(7) concerns private education loans which is not at issue in this matter.

As Plaintiff cannot establish that he is entitled to a right of rescission pursuant to 15 U.S.C. § 1635 or § 1638, Plaintiff is unable to satisfy the requirements of 15 U.S.C. § 1640(a)(3). Accordingly, Plaintiff is barred from any claim for rescission of the Note.

### G.  Plaintiff's Alleged Violations of RESPA by Citizens are Barred as a Matter of Law.

In the Amended Complaint, Plaintiff alleges that Citizens violated RESPA, specifically 12 U.S.C.A. 2605(k)(1)(C) and 12 C.F.R.  1024.35(b)(5)–(6) because Citizens did not properly respond to the NOE.  12 U.S.C.A. 2605(k)(1)(C) provides in pertinent part:

---

[10] The term "material disclosures" means the disclosure ... of the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, the due dates or periods of payments scheduled to repay the indebtedness, and the disclosures required by section 1639(a) of this title.

**(k) Servicer prohibitions**

**(1) In general**

A servicer of a federally related mortgage shall not—

\*      \*      \*

 **(C)** fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties;

12 U.S.C.A. 2605(k)(1)(C).

Similarly, 12 C.F.R.  1024.35(b)(5)–(6) provides in pertinent part:

(b) Scope of error resolution. For purposes of this section, the term "error" refers to the following categories of covered errors:

\*      \*      \*

(5) Imposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower.

(6) Failure to provide an accurate payoff balance amount upon a borrower's request in violation of section 12 C.F.R.  1026.36(c)(3).

12 C.F.R.  1024.35(b)(5)–(6).

Regulation X requires mortgage servicers to investigate and respond to any written notice from a borrower that asserts an "error" related to the servicing of her mortgage.  *See* 12 C.F.R. 1024.35(a)–(e); *see also Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1007 (11th Cir. 2016).  In response to a notice of error, "the servicer must either correct the errors the borrower identified and notify the borrower in writing or, after a reasonable investigation, notify the borrower in writing that it has determined no error occurred and explain the basis for its decision."  *Lage*, 839 F.3d at 1007; *see also* 12 U.S.C.A. 2605(e)(2).  Generally, a servicer has thirty days to respond to a notice of error.  12 C.F.R. 1025.35(e)(3)(i)(C).

A mere disagreement with the outcome of a reasonable investigation does not establish a RESPA violation.  "The statute does not require the servicer to provide the resolution or explanation desired by the borrower; it requires the servicer to provide a statement of its reasons." *See Whittaker v. Wells Fargo Bank, N.A.*, 2014 WL 5426497, *8 (Oct. 23, 2014) (citing *Bates*, 768 F.3d at 1135).  The goal of RESPA is "transparency and facilitation of communication." Where a servicer provides a complete, responsive, and factually supported explanation of why it determined no error occurred, a claim for a violation of RESPA cannot be sustained.  *Finster v. U.S. Bank Natl. Assn.*, 245 F.Supp.3d 1304, 1315 (M.D. Fla. 2017) 12 U.S.C.A. 2605(e)(2)(B); 12 C.F.R.  1024.35(e)(1)(i)(B); *cf. Bates*, 768 F.3d at 1135 (analyzing a RESPA claim prior to Regulation X and finding a response that explained what happened to the payment and offered contact information was sufficient, notwithstanding borrower's dissatisfaction); *see also Williams v. Wells Fargo Bank, N.A.*, 560 Fed.Appx. 233, 241–42 (5th Cir. 2014).

Plaintiff has failed to plead a cognizable claim for a violation of RESPA based upon Citizens' failure to properly respond to the NOE.  Plaintiff does not allege that the response to the NOE was untimely.  Nor does he allege that Citizens failed to conduct a thorough investigation or provide a complete, factually supported explanation of why it did not believe that an error occurred.  Rather, the basis of the claim seems to be that Plaintiff did not agree with the response given by Citizens.  This cannot form the basis of a RESPA violation as a matter of law.

### H.  The Amended Complaint Should Be Dismissed Because the Payoff Statement Did Not Assess Excessive Late Fees Against Plaintiff.

The entirety of Plaintiff's claim against Defendants rests upon the premise that the Payoff Statement was inaccurate because it included the Alleged Improper Charges.  Am. Compl. at 35–37.  But this premise is unsupported by the facts presented within the four corners of the Complaint.

Plaintiff claims that the Payoff Statement includes Alleged Improper Charges hinges upon the timing of the acceleration of the Note.  Under Ohio law, where the language of a promissory note and/or mortgage so requires, a lender must exercise its option to accelerate amounts due by a clear, unequivocal and affirmative act.  *Nixon v. Buckeye Bldg. & Loan Co.*, 18 Ohio Law Abs. 261, 263 (2nd Dist.1934).  *See also Rck Invest. Co. v. Centerville Land Investments Ltd*, 2nd Dist. Montgomery No. 7804, 1982 WL 3828, *2 (the trend in Ohio is that the entire balance is not due, and the mortgage may not be enforced until the mortgagee exercises his option).  Where the promissory note and/or mortgage contains such language, acceleration of the balance owed on the loan is not automatic upon a default but is upon the affirmative act of the lender.  *Rosselot v. Heimbrock*, 54 Ohio App.3d 103, 106, 561 N.E.2d 555, 559 (12th Dist.1988) *citing Corkins v. Tietmeyer*, Ohio Com.Pl. No. A-50918, 1936 WL 1766.  The initiation of a foreclosure action is the earliest step that can be deemed to accelerate a loan.[11]  *Id.*

Here, the Note contains the Acceleration Clause which requires an affirmative action on behalf of Citizens in order to accelerate the amounts due on the Loan.  Am. Compl. Ex. 1, Acceleration Clause.  In other words, the mere existence of a default upon the Note is insufficient to be considered as an acceleration of the Loan.  A review of the Default Letter indicates that Citizens did not accelerate the Note at that time, but rather informed Plaintiff of the default status of the Loan and warned that the failure to pay the amounts owed by the Cure Date ***may*** result in the acceleration of the Loan at the discretion of Citizens.  Doc. No. 1 Ex. 3.  The Default Letter

---

[11] Indeed, Exhibit 3 to the Complaint sets forth Plaintiff's right to reinstate the Loan, which is consistent with Paragraph 19 of the Mortgage which allows for the reinstatement of the Loan by paying all sums due and all expenses incurred by the lender as if no acceleration had occurred.  Compl., Ex. 3.  It provides notice that the loan may be reinstated at any time up to the entry of judgment, even if the loan has been previously accelerated.  Id.  Some Courts have found that reinstatement as provided in Paragraph 19 means that no "final" acceleration occurs even upon the filing of a foreclosure complaint.  See, e.g., *Bartram v. U.S. Bank Nat. Ass'n*, 211 So.3d 1009 (Fla. 2016).

does not provide that the Loan is accelerated automatically upon the mere failure to pay the amount owed by the Cure Date.

Despite this, Plaintiff pleads that the Loan was accelerated in October 2018, and speculates that this might have occurred upon expiration of the Cure Date. Am. Compl. ¶ 82. This allegation is contradicted by the documents Plaintiff attached to the Complaint.[12] The Exhibits to the Complaint evidence that there was no automatic acceleration of the Loan by virtue of the language of the Default Letter as discussed *supra*, nor was there any subsequent letter (in October 2018 or otherwise) whereby Citizens affirmatively stated that it had accelerated the Loan.[13] Thus, the first affirmative act of Citizens after the Default Letter which could be deemed as an acceleration of the Loan was the filing of the Foreclosure Action on April 9, 2019.

Under Plaintiff's own allegations, Late Fees were permitted to be assessed on the Loan until it was accelerated. Am. Compl. ¶ 77. Thus, Late Fees could be assessed on the Loan until April 9, 2019. The Note permits the assessment of a Late Fee of five percent (5%) of the overdue principal and interest for each payment which is not paid timely. The amount of the Monthly Payment was $632.26. Doc. No. 1 ¶ 76. Accordingly, the Late Fee for each missed payment would be $31.61. Plaintiff admits that he failed to pay eight (8) Monthly Payments between the Default Date (August 2018) and the initiation of the Foreclosure Action (April 2019). Doc. No. 1 ¶¶ 80 and 85. Therefore, the accumulated Late Fee owed by Plaintiff for that period is $252.88.

---

[12] The Sixth Circuit has acknowledged that where "a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Williams v. CitiMortgage, Inc.*, 498 Fed.Appx. 532, 536 (6th Cir. 2012) internal citations omitted. *See, generally, In re Natl. Century Financial Enterprises, Inc., Inv. Litigation*, 604 F.Supp.2d 1128, 1157 (S.D. Ohio 2009); *Natl. Assn. of Minority Contractors, Dayton Chapter v. Martinez*, 248 F.Supp.2d 679, 681 (S.D. Ohio 2002).

[13] By virtue of its attachment to the Complaint, Plaintiff admits that he received the correspondence from Citizens attached as Exhibit 7. Exhibit 7 contains a collection of all the correspondence from Citizens to Plaintiff regarding the Loan. Noticeably missing from the letters is any notice that Citizens has affirmatively accelerated the Loan.

There is no dispute that the Payoff Statement attached to the Complaint indicates a total amount of Late Fees as $227.11.  Doc. No. 1 Ex. 8.  This amount is ***less*** than the amount of late fees which could be assessed pursuant to the terms of the Note.  Accordingly, the Payoff Statement does not include excessive Late Fees, and thus cannot form the basis of a violation of 15 U.S.C. § 1639(g) and 12 C.F.R. § 1026.36(c)(3).  Accordingly, the Complaint should be dismissed.[14]

## I.  In the Alternative, This Court Should Enter a Stay Pending Resolution of the Foreclosure Action.

The *Colorado River* abstention doctrine reflects "considerations of judicial economy and federal-state comity."  *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998).  The doctrine recognizes that although federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them, considerations of judicial economy and federal-state comity may justify abstention in situations involving the contemporaneous exercise of jurisdiction by state and federal courts."  *Id.* (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236 (1976)).  Under the Doctrine, a federal court may, in certain limited circumstances, decline to adjudicate a claim that is already the subject of a pending state-court case.  Stay orders based on the *Colorado River* doctrine effectively end the litigation in federal court, "because the district court would be bound, as a matter of res judicata, to honor the state court's judgment." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 713, 116 S.Ct. 1712 (1996).  Thus, "abstention-based stay orders of this ilk are 'conclusive' because they are the practical

---

[14] Plaintiff also seems to allege that Fannie Mae should also be liable for the improper assessment of late fees in the Reinstatement Quotation. Doc.  Am. Compl. ¶¶ 116, 122.  However, Plaintiff has failed to plead a claim for such a violation and his claim as to the Payoff Statement cannot be applied to the Reinstatement Quotation as Ohio law has drawn a distinction between fees included in a payoff statement versus in a reinstatement quotation for purposes of determining whether a TILA violation has occurred. *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396 (2009).

equivalent of an order dismissing the case." *Id*. (*quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 12, 103 S.Ct. 927 (1983)).

Application of the *Colorado River* Doctrine requires parallel state and federal proceedings. *Id.* Proceedings are parallel where the parties, causes of action and theories of recovery are substantially similar. *Romine*, 160 F.3d at 340 (citing *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989)); *see Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988); *Lumen Constr., Inc. v. Brant Constr. Co*., 780 F.2d 691, 695 (7th Cir. 1985). Where the state and federal proceedings are parallel, eight factors are weighed: (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether the source of governing law is state or federal, *see Moses H. Cone,* 460 U.S. at 23–26, 103 S.Ct. 927; (6) the adequacy of the state court action to protect the federal plaintiff's rights, *see id.* at 26–28, 103 S.Ct. 927; (7) the relative progress of the state and federal proceedings, *see id.* at 21–23, 103 S.Ct. 927; and (8) the presence or absence of concurrent jurisdiction, *see Will v. Calvert Fire Ins. Co.,* 437 U.S. 655, 98 S.Ct. 2552 (1978). *See* 424 U.S. at 818–19, 96 S.Ct. 1236.

Here, this case and the state court Foreclosure Action are parallel proceedings. The two cases are substantially similar and involve the same parties, the same Loan and the same claims and defenses. In addition, seven of the eight factors weigh heavily in favor of abstention: (1) Cuyahoga County has assumed jurisdiction over the subject property; (2) the forums are equally accessible to the parties; (3) to permit this matter to go forward in this Court would lead to the possibility of piecemeal and inconsistent adjudication of the issues; (4) the claims and defenses that are pending in the Foreclosure Action are those which are at issue in this matter; (5) Plaintiff

has already appeared in the Foreclosure Action and has had the opportunity to assert his affirmative defense and any affirmative claims that he would like to plead in the Foreclosure Action; (6) the Foreclosure Action was filed in April 2019 and has been pending between the parties since that time and (7) there is concurrent jurisdiction between this Court and Cuyahoga County as to the issues presented.  Accordingly, in the event that this Court does not dismiss this action outright, it should abstain litigation until a final order is issued in the state court Foreclosure Action.

## IV.  CONCLUSION

For the reasons set forth herein, Plaintiff's claim fails as a matter of fact and law. Consequently, the Amended Complaint fails to state a claim upon which relief can be granted and must be dismissed with prejudice.  In the alternative, this Court should abstain from the litigation of this matter until after a final decision is issued in the Foreclosure Action.

Respectfully Submitted,

*/s/ Kathleen A. Nitschke*
Kerin Lyn Kaminski (0013522)
Kathleen A. Nitschke (0073397)
PEREZ MORRIS
1300 East Ninth Street, Suite 1600
Cleveland, Ohio 44114
Telephone:  216-621-5161
Facsimile:  216-621-2399
E-Mail:    kkaminski@perez-morris.com
           knitschke@perez-morris.com
***Counsel for Defendants Federal National***
***Mortgage Association and Citizens Bank, N.A.***

## CERTIFICATE OF COMPLIANCE WITH L.R. 7.1

I certify that the foregoing *Defendants' Motion to Dismiss Amended Complaint* complies

with the page limitation set forth in Local Rule 7.1 for cases assigned to the complex track.


/s/ Kathleen A. Nitschke
Kathleen A. Nitschke (0073397)
**Counsel for Defendants Federal National**
**Mortgage Association and Citizens Bank, N.A.**

### CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2022, a copy of the foregoing *Defendants' Motion to Dismiss Amended Complaint* was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system upon the following Parties:

Marc E. Dann and Daniel M. Solar, Counsel for Plaintiff Patrick Trivison and Class at mdann@dannlaw.com, dsolar@dannlaw.com, and notices@dannlaw.com.

Thomas A. Zimmerman, Jr. (*Pro Hac Vice*) and Matthew C. De Re (*Pro Hac Vice)*, Counsel for Plaintiff Patrick Trivison and Class at tom@attorneyzim.com and  matt@attorneyzim.com.


*/s/ Kathleen A. Nitschke*
Kathleen A. Nitschke (0073397)
**Counsel for Defendant Federal National**
**Mortgage Association and Citizens Bank, N.A.**