UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICK D. TRIVISON, *individually and on behalf of all others similarly situated*, | ) ) ) ) | CASE NO. 1:20-cv-00711 |
| | ) | JUDGE DAVID A. RUIZ |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| FEDERAL NATIONAL MORTGAGE ASSOC., *et al.*, | ) ) ) | |
| Defendants. | ) ) ) ) | |

This matter is before the Court upon the Defendants' Motion to Dismiss/Stay Plaintiff's Amended Complaint (R. 23), which Plaintiff opposes. (R. 26).[1] The Amended Complaint raises the following causes of action: (1) declaratory judgment against all Defendants that Plaintiff's and Class members' mortgage loans do not authorize the imposition of late fees after acceleration; (2) breach of contract against all Defendants claiming Plaintiff's and Class members' loans are not authorized to impose late fees after acceleration; (3) failure to provide Plaintiff and Real Estate Settlement Procedures Act (RESPA) Subclass members with accurate payoff statements against Defendant Citizens Bank, N.A. (Citizens); (4) furnishing of inaccurate payoff statements due to improper imposition of late fees against Defendant Citizens in violation of the Truth in Lending Act (TILA); (5) furnishing of inaccurate payoff statements due to

---

[1] Defendants also filed a reply in support of their motion. (R. 29).

improper imposition of late fees against Defendant Federal National Mortgage Association (Fannie Mae) in violation of TILA; and (6) a claim under RESPA by Plaintiff and purported class members who sent a notice of error (NOE) to Citizens alleging they were improperly assessed late fees. (R. 19).

## I. Facts

### A. The Parties

Plaintiff, Patrick D. Trivison, is a person who lives in Cuyahoga County, Ohio. (R. 19, PageID# 321. ¶2). As explained in more detail below, this action involves a mortgage loan that was secured by Plaintiff's principal place of residence—real property located in Mayfield Heights, Ohio. (R. 19-1, PageID# 366).

Defendant Fannie Mae is a government-sponsored entity under the conservatorship of the Federal Housing Finance Agency. (R. 19, PageID# 321, ¶3).[2]

Defendant Citizens is "an incorporated business under the laws of the State of Rhode Island which does business in Ohio as a licensed foreign corporation." (R. 19, PageID# 321, ¶4).

### B. Plaintiff's Loan and Foreclosure

On December 21, 2002, Plaintiff borrowed $100,500 and executed a Note in favor of

---

[2] Fannie Mae participates in the secondary mortgage market by "purchas[ing] mortgages that meet its eligibility criteria, packages them into mortgage-backed securities, and sells those securities to investors, and it invests in mortgage-backed securities itself." *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 86, 137 S. Ct. 553, 557 (2017). As part of the Housing and Economic Recovery Act of 2008, the Federal Housing Finance Agency ("FHFA") was established as an "independent agency of the Federal Government." 12 U.S.C. § 4511. Fannie Mae was placed into conservatorship by the FHFA that same year pursuant to 12 U.S.C. § 4617(a)(2). *See also Heibel v Fannie Mae*, 581 Fed. App'x 543, 544 (6th Cir. 2014). FHFA, as a conservator or receiver, "take[s] over the assets of and operate[s] the regulated entity with all the powers of the shareholders, the directors, and the officers of the regulated entity and conduct[s] all business of the regulated entity." 12 U.S.C, § 4617(b)(2)(B)(i).

Charter One Bank, N.A. (R. 19-1, PageID# 364, Exh. 1).³ The Note was secured by a Mortgage against Plaintiff's residence in Cleveland. (R. 19-1, PageID# 6 ¶ 28; R. 1-3, PageID# 366, Exh. 1). Fannie Mae was the assignee of Plaintiff's loan from Citizens. (R. 9-4, PageID# 402, Exh. 4). Pursuant to a contractual agreement between Fannie Mae and Citizens, the latter remained the servicer of Plaintiff's loan at all relevant times. (R. 19, PageID# 341, ¶74).

On March 13, 2017, Plaintiff entered into a Loan Modification Agreement (Mortgage) prepared by Citizens with a new principal amount of $65,581.72. (R. 19-5, PageID# 406, Exh. 5). Plaintiff's monthly payments were $349.48 at an interest rate of 5.75% and spread over forty years. *Id*. at PageID# 407. The Modification Agreement also stated that: "All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder." *Id*. at 408.

The Note further provided that if any "monthly payment" was not paid within 15 days after it was due, Plaintiff would be required to pay a "late charge" in the amount of 5% of the "overdue payment of principal and interest." (R. 19-1, PageID# 365; Exh. 1 at ¶6(A)). If Plaintiff failed to timely make each required "monthly payment" on the date it was due, he would be in "default." *Id*. at ¶6(B). Further, if Plaintiff was in "default," the agreement contained an acceleration clause stating that "the Note holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to

---

³ According to Defendants' motion, Defendant Citizens is the successor organization to Charter One Bank, N.A. (R. 23, PageID# 454).

me or delivered by other means." *Id*. at ¶6(C).

Plaintiff failed to make his "monthly payments" on his loan in August and September of 2018, and was in default as a result. (R. 19, PageID# 342, ¶80).

On September 5, 2018, Citizens sent Plaintiff a letter notifying Plaintiff he was in default, stating that Plaintiff was required to pay $1,435.08 in principal and interest as well as $17.47 in "late charge(s)" giving him a "Cure Date" of October 10, 2018. (R. 19-6, PageID# 417, Exh. 6). The letter also stated that Plaintiff's failure to pay the delinquent balance along with late charges by the Cure Date "may result in 1) acceleration: the full amount of any unpaid principal, all interest, other charges and advances if any, being immediately due and payable, and 2) the commencement of a foreclosure action or a foreclosure sale of your property." *Id*.

Plaintiff admits that he did not make any further payments after receiving this letter. (R. 19, PageID# 343, ¶82).

"On or about April 3, 2019, Citizens—acting on behalf of [Fannie Mae]—filed a foreclosure action against Plaintiff in the Cuyahoga Court of Common Pleas captioned *Citizens Bank, N.A., etc. v. Patrick D. Trivison, et al.*, Case No. CV-19-913410 (the "Foreclosure Action")." (R. 19, PageID# 343, ¶85). As of the date of this order, this action remains active.

## II. Standard of Review

When ruling upon a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all the factual allegations contained in the complaint and construe the complaint in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007); *accord Streater v. Cox*, 336 F. App'x 470, 474 (6th Cir. 2009). Nonetheless, a court need not accept a conclusion of law as true:

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short

and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v.*] *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed. 2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (*citing Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed. 2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955, 167 L.Ed. 2d 929.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S. Ct. 1955, 167 L.Ed. 2d 929. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955, 167 L.Ed. 2d 929. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

### III. Discussion

The theory underpinning all of Plaintiff's causes of action is the factual allegation that Defendants improperly assessed late charges following the acceleration of Plaintiff's loan.

**A.** *Younger* **Abstention Doctrine**

Defendants contend that the *Younger* abstention doctrine precludes this Court from resolving the instant action, as the dispute over the amounts due by Plaintiff on the Note—including whether the imposition of late fees was proper—is the subject of a pending state court

5

foreclosure action. (R. 23, PageID# 458).

"Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." *Younger v. Harris*, 401 U.S. 37, 43 (1971) (recognizing that federal courts should not enjoin state actions unless "absolutely necessary for [the] protection of constitutional rights" and should only be done so "under extraordinary circumstances, where the danger of irreparable loss is both great and immediate.") Nevertheless, "federal courts are obliged to decide cases within the scope of federal jurisdiction [and] [a]bstention is not in order simply because a pending state-court proceeding involves the same subject matter." *Sprint Communications, Inc. v Jacobs*, 571 U.S. 69, 72 (2013) (*citing New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 373 (1989) ("[T]here is no doctrine that . . . pendency of state judicial proceedings excludes the federal courts."))

The exercise of abstention, therefore, requires a finding that a pending state court action falls into one of the three following categories: (1) "a parallel, pending state criminal proceeding"; (2) pending "state civil proceedings that are akin to criminal prosecutions"; or (3) a pending proceeding "that implicate a State's interest in enforcing the orders and judgments of its courts…" *Sprint*, 571 U.S. at 72–73. The *Sprint* decision clarified that only *after* a court finds that a state action falls within the second category—the quasi-criminal context—does it consider the **additional** factors set forth in *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982), which are: (1) an ongoing state judicial proceeding, which (2) implicates important state interests, and (3) provides an adequate opportunity to raise federal challenges. The Supreme Court cautioned that "[d]ivorced from their quasi-criminal context, the three *Middlesex* conditions would extend *Younger* to virtually all parallel state and federal

proceedings," a result that is "irreconcilable" with the instruction that abstention is the "exception, not the rule." *Sprint Commc'ns, Inc.*, 571 U.S. at 81.[4]

Defendants' motion and reply brief do not address the Supreme Court's discussion of the *Younger* doctrine as set forth in the *Sprint* decision. (R. 23 & 29). Furthermore, the cases they rely upon all pre-date the Supreme Court's *Sprint* decision in 2013. *Id*. Post-*Sprint*, the Sixth Circuit has remanded where "the district court did not address *Sprint*'s emphasis on just how limited the civil-enforcement category is" and further took issue with the district court's failure to explain why a township's state-court zoning-enforcement action resembled a criminal proceeding. *Cath. Healthcare Int'l, Inc. v. Genoa Charter Twp., Michigan*, No. 21-2987, 2021 WL 5277096, at *1 (6th Cir. Nov. 12, 2021).

Despite the cautionary language in the Supreme Court's *Sprint* decision, some decisions continue to utilize the *Middlesex* factors as the test for whether a federal court should abstain under the *Younger* doctrine. *See, e.g., Harris v. Hutson*, 2022 WL 18207371, at *3 (6th Cir. Nov. 9, 2022) (finding all three conditions for abstention under the *Younger* doctrine were satisfied but applying the *Middlesex* factors exclusively); *Cunningham v. Mortg. Contracting Servs. LLC*, 634 Fed. App'x 361, 362 (3d Cir. 2016) (finding that *Younger* abstention was appropriate where a state foreclosure action was pending and employing the *Middlesex* factors with no mention of *Sprint*); *Campana v. Kaman & Cusimano*, No. 1:22-CV-00075, 2022 WL 279859, at *4 (N.D. Ohio Jan. 31, 2022) (same); *contra Dowell v. Bayview Loan Servs.*, LLC, No. 1:16-CV-02026, 2017 WL 9486188, at *9 (M.D. Pa. May 4, 2017) (concluding that defendants "have not shown

---

[4] Since *Sprint*, the Third Circuit Court of Appeals has "stressed several times since—that the 'three Middlesex conditions' are no longer the test for *Younger* abstention." *Malhan v. Sec'y United States Dep't of State*, 938 F.3d 453, 462 (3d Cir. 2019); *accord Harmon v. Dep't of Fin.*, 811 F. App'x 156, 157 (3d Cir. 2020).

7

that the Court should abstain from exercising jurisdiction" because they addressed only the *Middlesex* factors and not the threshold question of whether the case fell within any of the three exceptional categories of cases identified in *Sprint*), *report and recommendation adopted*, No. 1:16-CV-02026, 2017 WL 4230924 (M.D. Pa. Sept. 25, 2017)).

Heeding the Supreme Court's cautionary language in *Sprint*, before applying the *Younger* abstention doctrine, this Court must consider whether a pending state foreclosure action falls into any of the three narrow categories set forth above. The first category is clearly inapplicable, because a state foreclosure case is a civil, not criminal, proceeding. As to the second category, a recent decision of another district court within this Circuit has observed that "[t]he Sixth Circuit has not decided, post-*Sprint Communications*, whether a state foreclosure action, a request to appoint a receiver, or an action seeking a declaration that a building is a nuisance constitutes an enforcement proceeding akin to criminal prosecution." *Shefa, LLC v. City of Southfield*, 2021 WL 4440401, at *5 (E.D. Mich. Sept. 28, 2021).[5] This Court's own research has not uncovered

---

5  The *Shefa, LLC* decision noted that:

> A review of decisions in other courts reveals that state court foreclosure actions are generally not considered "exceptional circumstances" as outlined in *Sprint Communications*. *Harmon v. Dep't of Fin.*, No. CV 18-1021-RGA, 2021 WL 355152, at *3 (D. Del. Feb. 2, 2021) ("Courts in this Circuit have declined to apply *Younger* abstention when the underlying state action is a foreclosure action, absent a request to enjoin state proceedings because it does not fall into any of the three [*Sprint Communications*] categories."); *Gorodeski v. U.S. Bank Nat'l Ass'n*, 2016 WL 111422, at *3 (D.N.J. Jan. 11, 2016) ("Courts have routinely found that foreclosure proceedings do not fall within these three categories, and have declined to apply *Younger* abstention to state court foreclosure proceedings.") (collecting cases); *MacIntyre v. JP Morgan Chase Bank*, 2015 WL 1311241, at *2 (D. Colo. Mar. 19, 2015) (holding that none of the "three specifically enumerated categories" in *Sprint Communications* "appear to apply to" a Colorado judicial foreclosure proceeding); *Lech v. Third Fed. Sav. & Loan Ass'n of Cleveland*, No. 2:13-CV-518, 2013 WL 6843062, at *3 (S.D. Ohio Dec. 27, 2013), *report and recommendation adopted*, No. 2:13-CV-518, 2014 WL 184402 (S.D. Ohio Jan. 14, 2014) ("Here,

any Sixth Circuit appellate decisions since *Shefa, LLC* that decided whether a pending foreclosure action was subject to *Younger* abstention.

Absent binding authority stating otherwise, this Court does not believe a state foreclosure strongly resembles a criminal prosecution. While a foreclosure does pose the possibility that an individual will be deprived of property by the state, "[c]ivil enforcement proceedings that are akin to criminal prosecutions typically involve a state actor initiating a suit" against an individual or party (who happens to be the plaintiff in federal court) in order to sanction the individual or party in some manner. *Lech v Third Fed S&L Ass'n of Cleveland*, 2013 WL 6843062, at *2 (S.D. Ohio Dec. 27, 2013), *report and recommendation adopted*, 2014 WL 184402 (S.D. Ohio Jan. 14, 2014). Here, it is not a state actor or quasi-state actor that initiated the state foreclosure action, but a private entity.

Therefore, *Younger* abstention is only appropriate if the third category applies—a pending state proceeding that implicates Ohio's interest in enforcing the orders and judgments of its courts.[6] As stated above, the legal theory underpinning all of Plaintiff's claims is the

---

Plaintiff does not seek to enjoin the state-court foreclosure proceedings. Accordingly, because this federal action will not interfere with the state proceeding, *Younger* abstention is unwarranted.").

The cases in which *Younger* abstention was applied are generally only those in which a federal plaintiff sought to enjoin the ongoing state court foreclosure action, or otherwise requested relief that would effectively overturn a decision of the state court. *See, e.g., John J. Pembroke Living Tr. v. U.S. Bank Nat'l Ass'n for WaMu Series 2006-AR11 Trust.*, 2016 WL 9710025, at *4 (D. Colo. Oct. 24, 2016); *Abbatiello v. Wells Fargo Bank, N.A.*, 2015 WL 5884797, at *4 (E.D.N.Y. Oct. 8, 2015); *Ozuzu v. Greenpoint Mortg. Funding*, 2020 WL 5658776, at *6 (E.D.N.Y. Sept. 23, 2020).

*Shefa, LLC*, 2021 WL 4440401, at *5.
[6] The third category of *Younger* abstention applies "to civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions."

9

allegation that Defendants improperly assessed late charges following the acceleration of Plaintiff's loan. Essentially, there is a dispute over terms of the Note and the modification agreement and the amounts properly collectible thereunder. Nevertheless, the present action does not seek to enjoin the ongoing state court foreclosure action. Whether the requested relief would effectively overturn a decision of the state court is a thornier issue. Indeed, the state court could interpret those agreements and find that Defendants were permitted to collect late fees even after acceleration. Alternatively, the state court could also make a factual finding that Defendants did not attempt to collect late fees after acceleration. Either finding would all but eviscerate Plaintiff's claims. Whatever the state court's determination on these pivotal issues, the possibility remains that this Court could resolve these issues differently than the state court, resulting in inconsistent verdicts. That being said, inconsistent resolution of overlapping legal and/or factual issues is often a possibility where parallel litigation exists. That alone, however, does not appear to be sufficient under *Sprint* for this Court to abstain from addressing this action under the *Younger* doctrine. However, the Court will address below whether this concern warrants a stay of the pending action.

**B. *Colorado River* Stay**

Alternatively, Defendants argue that this court should enter a stay pending resolution of

---

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989). Examples of such proceedings expressly identified by Supreme Court decisions include a civil contempt order, *see Juidice v. Vail*, 430 U.S. 327, 336, n. 12 (1977) and a requirement for the posting of bond pending appeal, *see Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 13 (1987). Since *Sprint*, the Sixth Circuit has found that "the ability of the courts of the State of Ohio to determine when recusal of a judge or justice is appropriate and to administer the recusal decision process in accordance with state law operates 'uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Aaron v. O'Connor*, 914 F.3d 1010, 1017 (6th Cir. 2019) (citations omitted).

the state foreclosure action pursuant to the doctrine set forth in *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 817 (1976). (R. 23, PageID# 479-481). Plaintiff contends Defendants' contentions on this point are "so cursory as to be waived." (R. 26, PageID# 520). The Court does not deem Defendants' argument on this issue waived. While Defendants' argument on this issue spans approximately two pages, the Court is mindful of page limitations and appreciates a party's efforts to be concise and succinct. Further, the Court notes Plaintiff's opposition to this argument "on the merits" spans only three short paragraphs, less than a page total.

The *Colorado River* abstention doctrine is premised on "considerations of judicial economy and federal-state comity." *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998). It recognizes that, although federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them, considerations of judicial economy and federal-state comity may justify abstention in situations involving the contemporaneous exercise of jurisdiction by state and federal courts." *Id*. (*quoting Colorado River*, 424 U.S. at 817). Nevertheless, *Colorado River* abstention "rests on considerations of 'wise judicial administration' and the general principle against duplicative litigation." *Bates v Van Buren Twp*, 122 Fed. App'x 803, 806 (6th Cir. 2004).

"A *Colorado River* analysis has two steps. First, we must determine whether the state and federal proceedings are parallel. If they are not parallel, the district court should not abstain. If they are parallel, we weigh the eight *Colorado River* factors to determine whether abstention is merited." *Healthcare Co. Ltd. v. Upward Mobility, Inc.*, 784 Fed. App'x 390, 393 (6th Cir. 2019) (internal citations omitted). The threshold question in *Colorado River* abstention is whether there are "parallel" proceedings in state and federal court. *See Romine*, 160 F.3d at 339. Once a court

determines that the state and federal actions are parallel, a court must apply eight factors to determine whether exceptional circumstances warrant *Colorado River* abstention. *Id*. at 340-341.

### 1. Parallel Proceedings

Turning first to the threshold question of whether parallel proceedings exist in state and federal court, it is undisputed that a state foreclosure action remains pending in Ohio courts. In determining whether actions are parallel for purposes of *Colorado River* abstention, "exact parallelism is not required; it is enough if the two proceedings are substantially similar." *Romine*, 160 F.3d at 340 (internal quotations and marks omitted). Actions may be parallel where the parties are "substantially similar" and the claims "are predicated on the same allegations as to the same material facts." *Id*.

The Court finds the parties are substantially similar. The Amended Complaint alleged that "[o]n or about April 3, 2019, Citizens—acting on behalf of FNMA [Fannie Mae]—filed a foreclosure action against Plaintiff in the Cuyahoga Court of Common Pleas…." (R. 19, PageID# 343, ¶85). The Amended Complaint also alleged that Fannie Mae was the assignee of his mortgage loan. *Id*. at PageID# 332, 341; ¶¶36, 74. In Plaintiff's brief in opposition, he argues that Fannie Mae is not a party to the state foreclosure action, but is a predominant party in the instant matter. (R. 26, PageID# 521). This argument is not well taken, as the Amended Complaint itself concedes that a defendant in this action, Citizens, filed the state foreclosure action against Plaintiff and that Citizens filed the foreclosure "on behalf of [Fannie Mae]", the other defendant in the federal action. Thus, the three primary parties are all parties to both actions, as Citizens is acting on Fannie Mae's behalf in state court.

Plaintiff also disputes the contention that the two actions are predicated on the same allegations as to the same material facts, asserting the federal action is a putative class action

concerning alleged improper late fees in post-acceleration payoff statements, while the sate foreclosure action seeks to foreclose upon the note and mortgage. (R. 26, PageID# 521). Defendants contend that "[t]he two cases are substantially similar and involve … the same Loan and the same claims and defenses." (R. 23, PageID# 480). In deciding this issue, the Court "must compare the issues in the federal action to the issues actually raised in the state court action, not those that might have been raised." *Baskin v. Bath Twp. Bd. of Zoning Appeals*, 15 F.3d 569, 572 (6th Cir. 1994).

While Plaintiff may be correct that the ultimate foreclosure issue is not before this federal court and that Plaintiff's TILA and RESPA claims cannot be addressed in the state action, there is a common threshold issue before both the federal and state courts. The Amended Complaint states that this "case arises out of Defendants' improper imposition of late charges on Plaintiff's and Class members' mortgage loans." (R. 19, PageID# 321, ¶1). The crux of each and every cause of action raised is the allegedly improper imposition of late fees and the inclusion of said fees in payoff statements—issues that require contractual interpretation of the Note and loan modification agreements that are also at the center of the state court action.

In *Healthcare Co. Ltd.*, the Sixth Circuit Court of Appeals found that "adjudication of [defendant's] conversion claim will require determination of issues dispositive of [plaintiff's] breach of contract claim. The proceedings in both courts are therefore 'predicated on the same allegations as to the same material facts;' that the two parties pursue separate legal theories is of no consequence." 784 Fed. App'x at 394. In the case at bar, both actions revolve around the Note and the modification agreement entered by the parties. Further, if the state court were to find that the Note and its modification agreement permitted the imposition of late fees, the factual predicate of Plaintiff's federal claim would essentially be negated. Much as in *Healthcare Co.*

*Ltd.*, the adjudication of Defendants' state law foreclosure claim—and the calculation of the amounts properly owed—will require determination of issues dispositive of Plaintiff's federal claims.

Therefore, the Court finds the cases are parallel for purposes of *Colorado River* abstention.

### 2. *Colorado River* Factors

Having determined that parallel actions exist, the Court next addresses whether judicial economy warrants abstention by considering the following eight factors:.

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation . . . (4) the order in which jurisdiction was obtained. . . . (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*Healthcare Co.*, 784 Fed. App'x at 395 (*quoting Romine*, 160 F.3d at 340-41). The above factors are not a "mechanical checklist," but rather require "a careful balancing of the important factors as they apply in a given case." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983) ("The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case.")

The Court finds the consideration of the eight factors weighs strongly in favor of abstention. The first factor—whether the state court has assumed jurisdiction over any res or property—is present here, as Plaintiff's real property is the subject of the mortgage loan that may be foreclosed upon. While this factor favors abstention, it is not dispositive under the facts of this case as Plaintiff seeks damages stemming from the imposition of late fees and not the real property at issue in the state court action. The second factor is inconclusive, as this Court cannot

14

find that either forum is any less convenient as both actions are pending in courthouses in the same city: Cleveland, Ohio.

The third factor—"the danger of piecemeal litigation"—was the most significant factor, as stated in *Moses H. Cone Mem'l Hosp.*, and was "paramount in *Colorado River*." 460 U.S. at 16. "Piecemeal litigation occurs when different courts adjudicate the identical issue, thereby duplicating judicial effort and potentially rendering conflicting results." *Romine*, 160 F.3d at 341. Both actions revolve around the same agreements—the Note and the modification agreement—and the same factual allegations—that these agreements allegedly did not permit the collection of late fees after acceleration. In the state foreclosure action, the state court must resolve the amounts owed by Plaintiff under these agreements. In the process, the state court action would be required to make both legal and factual determinations with respect to the Note and the modification agreement that are essential to Plaintiff's claims before this federal court.

If both this Court and the Cuyahoga County Court of Common Pleas proceed, these "two courts would be adjudicating the same legal issue – the classic piecemeal litigation situation." *Healthcare Co. Ltd.*, 784 Fed. App'x at 396. The Sixth Circuit has emphatically noted the importance of the piecemeal litigation factor:

> When a case proceeds on parallel tracks in state and federal court, the threat to efficient adjudication is self-evident. But judicial economy is not the only value that is placed in jeopardy. The legitimacy of the court system in the eyes of the public and fairness to the individual litigants also are endangered by duplicative suits that are the product of gamemanship or that result in conflicting adjudications.

*Romine*, 160 F.3d at 341 (*citing Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 694 (7th Cir. 1985)). Given the inherent risk of conflicting findings, the third factor strongly favors abstention. *See also Intelligrated Sys., LLC v. Hy-Tek Material Handling Installation Servs.*,

15

2022 WL 1423169, at *4 (S.D. Ohio May 5, 2022) ("Both the state and federal actions will require a court to interpret the Subcontractor Agreement and determine if either party breached that agreement…. [i]f the Court were to exercise jurisdiction, the contracts between the parties would be interpreted twice and potentially in contradictory ways. That result would not only waste of [sic] judicial resources, but it would also harm the legitimacy of the court system."); *RGIS, LLC v. Gerdes*, 2020 WL 2043484, at *7 (E.D. Mich. Apr. 28, 2020) (finding a strong danger of duplicative litigation where both courts would have to interpret the validity of a non-compete clause).

The fourth factor—the order of jurisdiction—also favors abstention as the state court action was filed nearly a year before this action. The fifth factor—whether the source of governing law is state or federal—does not appear to be a pivotal issue in this case. The sixth factor—the adequacy of the state court action to protect the federal plaintiff's rights—also does not tilt strongly in either direction. Certainly, the state court can adequately protect Plaintiff by considering the contractual issues raised. While the state court cannot give Plaintiff the relief he seeks in federal court, that avenue could remain open after the lift of a stay.

The seventh factor—the relative progress of proceedings—also favors abstention. A review of the state court docket indicates that discovery was to be completed by September 12, 2022. Citizens filed a motion for summary judgment on October 11, 2022, which was granted on June 20, 2023.[7] Thus, the state action is at a far more advanced stage than the case at bar.

Finally, the eighth factor—the presence or absence of concurrent jurisdiction—appears to be the only factor that counsels against abstention, as the state court cannot exercise jurisdiction

---

[7] The state action, nevertheless, remains open.

16

over Plaintiff's TILA and RESPA claims. However, as discussed above, the state court's resolution of the contractual issues could well resolve these claims. If they do not, this Court can take those claims up after a stay has been lifted.

Therefore, the Court's consideration of the eight factors weighs strongly in favor of *Colorado River* abstention. The Sixth Circuit has expressed the view that a stay, rather than a dismissal, is the best way to effectuate *Colorado River* abstention. *See Bates v. Van Buren Twp.*, 122 Fed. App'x at 809. This matter is hereby STAYED until the resolution of the state action.

### IV. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss/Stay is GRANTED in part and DENIED in part. Defendants' motion to dismiss this matter based on the *Younger* abstention doctrine is DENIED. Defendants' motion to dismiss the Amended Complaint for failure to state a claim is DENIED without prejudice. Defendants' alternative motion to stay this matter pursuant to *Colorado River* abstention is hereby GRANTED. Every ninety days following the entry of this order, the parties shall file a Joint Status Report updating the Court on the status of the state court action.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States District Judge

Date: September 28, 2023